COMMONWEALTH vs. CHAD EDWARD.

No. 92-P-1199.

Dukes County. April 28, 1993. - May 24, 1993.

Present: BROWN, KASS, & LAURENCE, JJ.

Rape. Practice, Criminal, Instructions to jury. Conflict of Interest. Attorney at Law, Conflict of interest.

At the trial of an indictment for rape the judge's instructions to the jury on the degree of penetration necessary to constitute oral rape were correct. [523]

A criminal defendant did not demonstrate that his trial counsel had an actual or genuine conflict of interest that impaired counsel's independent professional judgment [523-524], or that the asserted conflict adversely affected counsel's performance so as to prejudice the defense [524-525].

INDICTMENT found and returned in the Superior Court Department on August 15, 1990.

The case was tried before Walter E. Steele, J.

John C. McBride for the defendant.

Julia K. Vermynck, Assistant District Attorney, for the Commonwealth.

LAURENCE, J. Following a jury trial, the defendant was convicted of rape of a fifteen year old babysitter whom he had employed.[1] He now contends that the judge erred in defining oral rape in the charge, and that his conviction should be reversed on the ground of ineffective assistance of counsel because of his trial counsel's friendship with an important prosecution witness. There is no merit to the defendant's appellate arguments, and we affirm the judgment of conviction.

---

[1]Two other indictments, charging the defendant with indecent assault and battery and unnatural and lascivious acts on a child under the age of sixteen, were filed with the defendant's consent.

The complainant was a resident of Chappaquiddick Island who was working during the summer at a clothing store operated by the defendant and his wife in Edgartown. She also regularly performed babysitting services that summer. On August 1, 1990, the defendant (whose wife was off-island that night) asked the complainant to babysit for a friend with whom he planned to go out that evening. When the complainant demurred because the men might not return until after the last ferry to Chappaquiddick had departed at midnight, the defendant told her she could sleep at his house overnight. She agreed, after obtaining her mother's permission.

The complainant testified that, after she had gone to bed following the defendant's return home at 1:30 A.M., the defendant came into her room naked, fondled her, and, over her protests, penetrated her with his fingers, tongue, and penis. After the defendant stopped and fell asleep, the complainant left the house, in the dark. In the morning, she called a fifteen year old girl friend and a coworker, both of whom were called as fresh complaint witnesses, to tell them of these events. The defendant's indictment swiftly ensued.

During jury empanelment, a potential juror (who was ultimately seated) informed the judge at sidebar that the complainant's girl friend, identified to the venire as one of the potential witnesses, was one of her students. At that point, the defendant's counsel told the judge, still at sidebar, that the girl was also "a good friend of mine."[2] When defense counsel later began his cross-examination of the girl friend, who was called as the prosecution's first fresh complaint witness, he asked if he could call her "Missy"[3] and announced

---

[2]The defendant does not assign as error the court's lack of inquiry in response to this statement by defense counsel, nor does he attack his failure to be present at sidebar during empanelment. Cf. *Commonwealth* v. *Owens*, 414 Mass. 595, 601-604 (1993).

[3]Defense counsel did not initiate the use of the name "Missy" in addressing the witness, whose given name was Maria. She had, in direct examination, explained that her nickname was Missy and expressed her willingness to be so called by the prosecutor.

to the jury that he had known her "from when she was a little kid."[4]

The defendant took the stand to deny he had ever entered the complainant's bedroom or had any sexual connection with her. His defense strategy emphasized that the complainant had falsely accused him because of his criticisms of, and his threats to inform her mother about, her underage drinking and other inappropriate behavior which he had observed.

The one instruction challenged on appeal — but not at trial — related to the degree of the penetration necessary to constitute oral rape. The judge twice stated that the jury could find rape if they determined there was evidence that the defendant's lips came in "contact" with the young woman's "vagina, vulva, or labia." This was in accord with the decisional law. See *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. 200, 204-205 (1987) ("Intrusion into the vagina itself is not required to make out the wrongful penetration. Touching by the male of the vulva or labia . . . is intrusion enough"); *Commonwealth* v. *Nylander*, 26 Mass. App. Ct. 784, 788-789 (1989).[5] In light of the victim's unequivocal testimony of several incidents of penile, digital, and oral penetration, there was little chance that the jurors would have reached a different verdict had the judge charged, as the defendant now claims was required, that a more intrusive labiogenitalic touching was required. Contrast *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). See *Commonwealth* v. *Azar*, 32 Mass. App. Ct. 290, 308 (1992).

The defendant's effort to transmute his trial counsel's acknowledged acquaintance with the fresh complaint witness into a conflict of interest establishing ineffective assistance of

---

[4]Although the defendant's brief states that "there is no indication that the defendant was ever advised" that his counsel was a long-time friend of the witness, the record is devoid of any affidavit by the defendant to that effect or of any manifestation by the defendant of surprise or protest when the information was revealed to the jury . Cf. *Commonwealth* v. *Carney*, 31 Mass. App. Ct. 250, 258-259 (1991).

[5]Contrary to the defendant's assertion, the judge did not tell the jury that they could convict the defendant of rape without evidence of penetration.

counsel is also without merit. He has failed to demonstrate, by citation of any pertinent authority or by reasoned argument, that his counsel's acknowledged friendship with the fifteen year old witness "from when she was a little kid" amounted to the sort of " 'actual' or 'genuine' conflict of interest . . . where the 'independent professional judgment' of trial counsel is impaired," *Commonwealth* v. *Shraiar*, 397 Mass. 16, 20 (1986) (citations omitted) — a situation which would require reversal without proof of actual prejudice.[6]

Furthermore, the defendant has not shown that the asserted conflict adversely affected his counsel's performance. See *Commonwealth* v. *Hurley*, 391 Mass. 76, 81 (1984). In the absence of a "genuine" conflict, the defendant recognizes that, as in appeals alleging ineffective assistance of counsel generally, he must establish that counsel's remarks to the jury and subsequent alleged failure to cross-examine the witness aggressively materially prejudiced his case. This he has failed to do. Our review of the record convinces us that his attorney's performance was not "manifestly unreasonable," *Commonwealth* v. *White*, 409 Mass. 266, 273 (1991), nor "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 n.10 (1977).

---

[6]Counsel's long-term acquaintance with this witness, arising out of his summer sojourns on Martha's Vineyard (of which he also apprised the jury) — and of which the defendant may well have been aware, see note 4, *supra* — was not the sort of "direct and close personal relationship with a material prosecution witness" deemed to constitute an "actual" or "genuine" conflict in the several cases cited for that proposition in *Commonwealth* v. *Leslie*, 376 Mass. 647, 653 n.13 (1978), on which the defendant relies. All but one of the authorities mentioned in *Leslie* dealt with defense counsel who, unknown to the defendant, had represented or was representing a prosecution witness. The one exception was *State* v. *Moser*, 78 N.M. 212, 214-215 (1967), in which defense counsel failed to reveal to the defendant that he was related to the complaining witness and that two of the jurors whom he had failed to challenge were uncles of the complaining witness. None of the cases mentioned in *Commonwealth* v. *Leslie, supra*, or *Commonwealth* v. *Walter*, 396 Mass. 549, 554-555 (1986), also relied on by the defendant, expressly establishes or supports the principle that defense counsel's friendship with a prosecution witness amounts to a "genuine" conflict or creates prejudice per se.

To the contrary, we agree with the Commonwealth's characterization of defense counsel's handling of the youthful witness as one which reflected a skillful tactical choice, consistent with the over-all strategy of portraying the complainant as a "troubled, rebellious young lady, who fabricated the incident." The cross-examination of this fresh complaint witness established that the complainant persistently refused to inform her mother of the alleged rape; had spent the day after the assault relaxing at the beach, still without calling her mother or any authorities; and, most telling of all, had not even revealed to the witness that she had been raped or disclosed any details that could amount to rape. Instead, she had said merely that the defendant had "touch[ed] her in the genital areas where she did not feel comfortable." It was only later, to other witnesses, that the complainant became specific about the nature of the defendant's touching.

Counsel's focused cross-examination of this witness had a dual positive result for the defense. First, it supported the defense theory that the rape had never happened and that the complainant was in the process of "formulating" her vindictive story as time went on. Second, by putting the fifteen year old witness at ease and presenting himself in a familiar, nonthreatening manner, and by carefully limiting his questions, counsel minimized the risk, inherent in "fresh complaint" situations, see *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992), of harmful repetition of graphic details that might have added corroborative force to the complainant's story. The defendant has presented nothing beyond speculation to show either that counsel's judgment was affected by an interest adverse to his, see *Commonwealth* v. *Burbank*, 27 Mass. App. Ct. 97, 106 (1989), or that counsel's efforts harmed rather than helped his cause.

*Judgment affirmed.*