COMMONWEALTH *vs.* CHAD EDWARD.

No. 07-P-993.

Dukes County. September 4, 2008. - September 2, 2009.

Present: McHugh, Grainger, & Wolohojian, JJ.

*Practice, Criminal,* New trial, Instructions to jury, Assistance of counsel, Public trial. *Waiver. Evidence,* Fresh complaint, Corroborative evidence. *Witness,* Corroboration. *Constitutional Law,* Assistance of counsel, Public trial.

Discussion of the scope and standard of review applied to a trial court judge's denial of a new trial motion, and to unpreserved claims of error and claims of ineffective assistance of counsel based on failure to preserve claims of error. [164-166]

There was no merit to the claims of a criminal defendant, brought in a motion for a new trial, that the trial judge failed to instruct the jury contemporaneously on the limited use they could make of fresh complaint testimony [166], failed to define the term "corroborate" in his final jury charge [166-167], or failed to prohibit the victim from offering self-corroborating fresh complaint testimony [167].

A trial court judge did not abuse his discretion in denying, without a hearing, so much of a criminal defendant's motion for a new trial as alleged claims of ineffective assistance of counsel, given the absence of any showing or even allegation about the impact of the alleged errors on the jury's verdict. [168-169]

A trial court judge abused his discretion in denying, without a hearing, the portion of a criminal defendant's motion for a new trial in which the defendant asserted that the court room had been closed during the testimony of the victim, in violation of his right to a public trial under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, where that issue presented a substantial question that required a hearing, given that the order to close the court room was improper on its face, as the interests to be protected by the order never were addressed and did not obviously emerge from the record, and there was no consideration of alternatives or statement of reasons other than a reference to the statute authorizing closure. [169-174]

INDICTMENT found and returned in the Superior Court Department on August 15, 1990.

Following review by this court, 34 Mass. App. Ct. 521 (1993), a motion for a new trial, filed on October 23, 2006, was considered by *Gary A. Nickerson, J.*

*Cathleen E. Campbell* for the defendant.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

McHUGH, J. In 1991, a Superior Court jury found the defendant, Chad Edward, guilty of rape of a child, G. L. c. 265, § 23; indecent assault and battery on a person who has attained the age of fourteen, G. L. c. 265, § 13H; and unnatural and lascivious acts with a child under the age of sixteen, G. L. c. 272, § 35A. He was sentenced on the rape conviction to twenty years at Massachusetts Correctional Institution at Concord.[1,2] The defendant appealed, claiming that the trial judge incorrectly defined rape in his charge to the jury and that the defendant's trial attorney was ineffective because of his friendship with a fresh complaint witness. We rejected both claims and affirmed the judgment. See *Commonwealth* v. *Edward,* 34 Mass. App. Ct. 521 (1993).

In 2006, thirteen years after his direct appeal, the defendant, assisted by new counsel, filed a motion for a new trial, accompanied by a series of affidavits. In his motion, the defendant asserted that the courtroom had been closed during the testimony of the victim, in violation of his right to a public trial preserved by the Sixth Amendment to the Constitution of the United States and by art. 12 of the Declaration of Rights. He also claimed that the trial judge failed to instruct the jury contemporaneously on the limited use they could make of fresh complaint testimony, failed to define the term "corroborate" in his final jury charge, and failed to prohibit the victim from offering self-corroborating fresh complaint testimony. Finally, he asserted that his trial and his appellate counsel were ineffective for a variety of reasons discussed in more detail, *infra.*

---

[1]The sentence was part of a now discarded statutory sentencing scheme which made the defendant eligible for parole in two years. See *Commonwealth* v. *Ly,* 450 Mass. 16, 21 n.6 (2007); *Commonwealth* v. *Boyer,* 58 Mass. App. Ct. 662, 662 n.1 (2003).

[2]The convictions of indecent assault and battery, and unnatural and lascivious acts, were filed with the defendant's consent.

The motion was denied without a hearing by a judge who had not been the trial judge.[3] The motion judge ruled that the defendant had waived all of the claims by failing to raise them at trial or on appeal. Waiver, in the judge's view, meant that review of the claims was available only to the extent that the defendant could show ineffective assistance of counsel under the familiar standard set out in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). With respect to all but the public trial claim, the judge concluded that trial counsel's performance had not been deficient. Insofar as the public trial claim was concerned, the judge reasoned that no prejudice resulted from any deficiency in the way trial counsel handled the issue.

The defendant now appeals, asserting all of the grounds contained in his motion, and also asserting that he was entitled to an evidentiary hearing on the motion. We find no reason to disturb the motion judge's handling of any claim save that involving the public trial. As to that claim, a further hearing in the Superior Court is required.

1. *Scope and standard of review.* The facts of the case are set out in our earlier opinion, see *Edward, supra* at 522, and need not be repeated here. In reviewing the denial of a new trial motion, "we examine the motion judge's conclusion only to determine whether there has been an abuse of discretion or other error of law." *Commonwealth* v. *Raymond*, 450 Mass. 729, 733 (2008). Because here the motion judge did not preside at trial, we "regard ourselves in as good a position as the motion judge to assess the trial record." *Ibid.*, quoting from *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). In assessing that record, we keep in mind that, "[i]n a motion for a new trial, the burden is on the defendant to prove facts that are 'neither agreed upon nor apparent on the face of the record.' In posttrial proceedings, the defendant bears the burden to rebut the presumption that [he] had a fair trial." *Commonwealth* v. *Comita*, 441 Mass. 86, 93 (2004) (citations omitted).

The defendant already has had a direct appeal in which he raised none of the claims he asserts here. Consequently, his substantive claims, except for the claim involving his right to a

---

[3]The trial judge since had retired, and he died one year before the motion was filed.

public trial, are waived, for waiver occurs when a litigant fails to raise at trial or on appeal a claim that he could have raised. See, e.g., *Commonwealth* v. *Mahar*, 442 Mass. 11, 13 n.4 (2004); *Commonwealth* v. *Terzian*, 61 Mass. App. Ct. 739, 746 n.9 (2004).[4] But "[a] finding of waiver does not end the analysis . . . . [In a subsequent proceeding, a]ll claims, waived or not, must be considered. The difference lies in the standard of review that we apply when we consider the merits of an unpreserved claim." *Commonwealth* v. *Randolph*, 438 Mass. 290, 293-294 (2002) (footnote omitted). We review unpreserved claims of error and claims of ineffective assistance of counsel based on failure to preserve claims of error using the same standard, i.e., whether the error gave rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Azar*, 435 Mass. 675, 685 (2002); *Commonwealth* v. *Baran*, 74 Mass. App. Ct. 256, 273-274 (2009).[5] To decide whether there was a substantial risk of a miscarriage of justice, in turn, requires us to consider four related questions:

> "(1) Was there error? . . . (2) Was the defendant prejudiced by the error? . . . (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? . . . (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision? . . . Only if the answer to all four questions is 'yes' may we grant relief."

*Randolph, supra* at 297-298.

With limited exceptions, the foregoing rules regarding waiver and its consequences apply equally to constitutional and non-

---

[4]The phrase "a claim that he could have raised" is an important qualifier. Ineffective assistance of counsel cannot be raised on appeal for the first time unless "the factual basis of the claim appears indisputably on the trial record." *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994). Accordingly, failure to raise on appeal an ineffective assistance claim without a self-evident factual basis does not waive the claim. See *Commonwealth* v. *Zinser*, 446 Mass. 807, 811-812 (2006).

[5]Claims of ineffective assistance of counsel based on performance deficiencies, such as failure to investigate or to offer helpful evidence, involving more than failure to preserve error are analyzed under the two-phase standard discussed in *Saferian*, 366 Mass. at 96. See *Baran, supra* at 271-272.

constitutional claims. See *Commonwealth* v. *Balliro,* 437 Mass. 163, 166 (2002); *Commonwealth* v. *Hicks,* 50 Mass. App. Ct. 215, 217 (2000). The public trial claim the defendant has asserted here is one such exception, so we defer discussion of the rules applicable to that claim until after we apply the rules just discussed to the other claims the defendant has asserted.

2. *Fresh complaint claims.* As noted *supra,* the defendant claims that the trial judge (1) failed to instruct contemporaneously on fresh complaint, (2) did not properly define the term "corroborate" in the final jury charge, and (3) allowed the victim to self-corroborate her testimony.[6]

Treating the claims of error in order, although a contemporaneous fresh complaint instruction is recommended, it is "not a strict requirement." *Commonwealth* v. *Vieux,* 41 Mass. App. Ct. 526, 533 (1996), cert. denied, 520 U.S. 1245 (1997). See *Commonwealth* v. *Lorenzetti,* 48 Mass. App. Ct. 37, 40-41 (1999) (although contemporaneous instructions were erroneous, error was cured by final instructions).

As for the alleged failure to explain the term "corroborate," the judge spent approximately two and one-half transcript pages forcefully limiting the use the jury could make of the testimony given by fresh complaint witnesses. Among other things, he told the jurors that the testimony could be used only for:

> "corroboration to support, buttress the testimony of the alleged victim. That means that you may take such statements into account when you evaluate the credibility [a word he had explained earlier in the charge] of the victim's testimony on the witness stand here at trial. You may not consider such statements as positive evidence that the offenses occurred. They are admitted into evidence for your consideration solely to assist you in determining how much weight you give to the victim's testimony in this trial about what happened. . . . As I said earlier, the purpose of this evidence is strictly limited to determine the credibility of [the victim's] testimony and whether or not it is corroborative of her testimony here in court."

---

[6]This case was tried years before *Commonwealth* v. *King,* 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006), in which the Supreme Judicial Court announced the first complaint doctrine.

The defendant bases his corroboration claim on *Commonwealth* v. *Scanlon*, 412 Mass. 664, 674 (1992), a case decided after this case was tried. There, the Supreme Judicial Court said that "[a]n instruction that [fresh complaint] evidence may be used only to corroborate the complaining witness's testimony, without a definition of the term corroboration, does not alleviate the risk that the jury would use such evidence substantively." *Ibid.* See *Commonwealth* v. *Lorenzetti*, *supra* at 40 n.3. Even if the decision in *Scanlon* applies to the instructions given in this case, the instruction did not use the word "corroborate," without explanation. Indeed, the judge anticipated the Supreme Judicial Court's decision in *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992), when he said that the fresh complaint testimony could not be used "as positive evidence that the offenses occurred." Moreover, he used the words "support" and "buttress" as synonyms immediately after he used the word "corroborate," and told the jury twice that they could use the testimony only in evaluating the victim's credibility. Considered as a whole, see *Commonwealth* v. *Raymond*, 424 Mass. 382, 386 (1997), the instruction adequately and clearly defined the limited use the jurors could make of the fresh complaint testimony. See generally *Commonwealth* v. *Shiek*, 42 Mass. App. Ct. 209, 212 (1997).

Lastly, the defendant claims that the victim engaged in impermissible self-corroboration when she testified that she told eleven people about the defendant's conduct. See *Commonwealth* v. *Peters*, 429 Mass. 22, 28 (1999) ("while a complainant may testify about the fact that she made a complaint to another about a sexual assault, the person complained to, the fresh complaint witness, must be produced to testify about what the complainant said and to be available for cross-examination. We can find no decision, or other authority, which permits a complainant to engage in self-corroboration"). Here, though, the Commonwealth produced three fresh complaint witnesses who testified that the victim had, in fact, told them about the defendant's actions, and the victim gave no details about what she told anyone. Accordingly, there was no naked self-corroboration of the type discussed in *Peters*.[7]

---

[7]The defendant also claims that his trial counsel was ineffective in failing to preserve those claims for appellate review. He has not shown, however, that

3. *Ineffective assistance claims.* The defendant next claims that his trial and his appellate attorneys were ineffective because they failed to object to, and raise on direct appeal, (1) the manner in which the trial judge questioned the jury venire, (2) the judge's failure to inquire into a taxicab encounter between a juror and a witness, (3) the Commonwealth's challenges of male jurors, (4) certain definitions, or the absence thereof, in the jury instructions, and (5) failing to request specific unanimity and lesser included offense instructions.

Again, dealing with those claims in order, it does appear that the judge failed to ask jurors on the second day of jury selection whether they would have a "problem" sitting on a case in which the defendant was "accused of doing some indecent things . . . to a young woman who at the time was . . . [f]ifteen years old," although the judge did ask that question of the venire on the first day of empanelment. The judge, however, did ask the statutory questions on both days.[8] See G. L. c. 234, § 28, first par. Moreover, there is no allegation that a deliberating juror would have been excluded had the judge asked the omitted question the second day, or that the jury was partial or unfair.

The same kind of problem attends the judge's handling of the taxicab incident. One of the jurors was a taxi driver and he picked up a passenger who turned out to be a witness in the case. Upon arriving at the courthouse, the witness told the prosecutor of the incident and said that she had told the driver that she "had a long day ahead of [her]." There is no allegation that the encounter between the juror and the witness was anything other than accidental, that there was any more to the conversation than the prosecutor relayed, or that either the witness or the juror was in any way influenced by it.

As for the challenge issue, there is no allegation that had counsel requested the judge to inquire into the basis for the Commonwealth's use of its peremptory challenges, the Com-

his trial counsel's actions "likely deprived [him] of an otherwise, available, substantial ground of defence." *Saferian*, 366 Mass. at 96.

[8] In fact, the record discloses that no one in the venire answered affirmatively when the judge asked the question the first day; although, before the judge asked the question, he excused one juror at her request because of her personal difficulties with the nature of the charges.

monwealth would have been unable to show a neutral reason for their exercise, see *Commonwealth* v. *Sosnowski*, 43 Mass. App. Ct. 367, 372-373 (1997), or that any juror who was excused would have been retained. See *Commonwealth* v. *Santos*, 41 Mass. App. Ct. 621, 626-627 (1996).

Finally, no specific unanimity instruction was required with respect to the three separate offenses with which the defendant was charged, because specific unanimity considerations apply only to situations in which multiple events could be the basis for conviction of a single charge. See, e.g., *Commonwealth* v. *Thatch*, 39 Mass. App. Ct. 904, 904 (1995) ("A unanimity instruction is required only if there are separate events or episodes and the jurors could otherwise disagree concerning which act a defendant committed and yet convict him of the crime charged"). There is no allegation as to how the remaining components of the charge were deficient or why the charge as a whole was insufficient.

In the end, the element common to all of the defendant's claims of deficient performance by trial counsel is the absence of any showing or even allegation about the error's impact. The lack of any focus on consequences has a direct bearing on the defendant's entitlement to a hearing, for decided cases require a hearing on a motion for a new trial only when the motion and accompanying affidavits raise a "substantial issue." See, e.g., *Commonwealth* v. *Stewart*, 383 Mass. 253, 260 (1981); *Commonwealth* v. *Arriaga*, 438 Mass. 556, 571 (2003). In turn, the existence of a "substantial issue" depends on "the seriousness of the issue and the adequacy of the defendant['s] showing." *Commonwealth* v. *Arriaga*, *supra*. When considering whether there was a substantial risk of a miscarriage of justice, the showing must include something that would permit a reasoned conclusion that the alleged error, in the context of the entire trial, "materially influenced the verdict." *Randolph*, 438 Mass. at 298. Here, there is nothing, save "multiple layers of speculation," see *Commonwealth* v. *Santos*, *supra* at 627, and, as a consequence, no hearing on the motion was required regarding these claims.

4. *Public trial claim.* That brings us finally to the defendant's claim that he was denied his right to a public trial. The claim arises out of the following sidebar colloquy that occurred after

the jury had been empaneled and sworn. The prosecutor asked to approach sidebar where he told the judge that he and defense counsel had agreed on a series of stipulations. Then, in the following colloquy, the prosecutor turned to another subject:

PROSECUTOR:        "And the other thing is the first witness is [the victim]. She's at this time seventeen years old. I would be willing to close the courtroom to the public under Chapter 278, 16A.

                   "Is her father going to be allowed to stay? He's going to be asking for sequestration of witnesses."

DEFENSE COUNSEL:   "I would like his wife to stay with him."

JUDGE:             "Is she going to be a witness?"

DEFENSE COUNSEL:   "Yes, she is."

JUDGE:             "I don't feel that strongly. I hate to have them here."

PROSECUTOR:        "I would object. If there's going to [be] sequestration — he's allowed to have all his witnesses in the court and I'm not allowed to have any."

DEFENSE COUNSEL:   "Pick the ones you like."

JUDGE:             "I think I'm going to go along with your brother. It might be better in the long run."

DEFENSE COUNSEL:   "I won't move to do it. I want to keep her here. He'll be furious if I don't keep her here."

JUDGE:             "All right, [defense counsel], the district attorney has moved under the statute because of the age of the child and the nature of the case that the courtroom — that spectators be excluded from the courtroom. It's allowed."

Commonwealth *v.* Edward.

DEFENSE COUNSEL: "During her testimony."

JUDGE: "During her testimony, of course. Only, all witnesses are sequestered. I ask counsel to tell prospective witnesses what that means."

PROSECUTOR: "We'll have sequestration."

DEFENSE COUNSEL: "Now, when you say — may the wife stay with the defendant?"

PROSECUTOR: "I don't object to that."

JUDGE: "It's closed only on direct and cross-examination of the child."

The prosecutor then called the victim, who was examined and cross-examined for most of the rest of the day. Indeed, her testimony consumed about one-third of the trial.[9] The record does not reflect any court clearance efforts at the beginning of her testimony nor any reopening of the courtroom when her testimony ended. The defendant, however, filed with the new trial motion an affidavit saying that, although his wife remained in the courtroom throughout the victim's testimony, "others," including one of his friends and his brother, were barred from the courtroom while the victim testified. The friend and the brother filed corroborative affidavits of similar tenor. The defendant's affidavit also stated that his trial counsel did not tell him what had occurred at the sidebar hearing before the victim testified.

On the face of it, the order to close the courtroom was improper. The statute on which the judge relied, G. L. c. 278, § 16A,[10] does require closure of a courtroom during the trial of,

___

[9]In its entirety, the trial testimony consumed 164 pages of transcript, of which fifty-eight pages contained the victim's testimony.

[10]In its entirety, G. L. c. 278, § 16A, as amended by St. 1986, c. 334, § 16, provides as follows:

"At the trial of a complaint or indictment for rape, incest, carnal abuse or other crime involving sex, where a minor under eighteen years of age is the person upon, with or against whom the crime is alleged to have been committed, or at the trial of a complaint or indictment for getting a woman with child out of wedlock, or for the non-support of a child born out of wedlock, the presiding justice shall exclude the general

inter alia, a complaint or indictment for "rape, incest, carnal abuse or other crime involving sex" if the victim is under eighteen years of age.[11] G. L. c. 278, § 16A, as amended by St. 1986, c. 334, § 16. In 1982, however, the United States Supreme Court invalidated the mandatory aspect of the statute on First Amendment grounds, holding that closure was prohibited in the absence of a compelling interest and a closure order narrowly tailored to serve that interest. See *Globe Newspaper Co.* v. *Superior Ct.*, 457 U.S. 596, 606-607 (1982). Two years later, in *Waller* v. *Georgia*, 467 U.S. 39, 46-48 (1984), the Court reached the same result on Sixth Amendment grounds, adding that a closure order had to be accompanied by findings adequate to support it.[12]

Here, the interests to be protected by closure never were addressed and they do not obviously emerge from the record, particularly when the fresh complaint witnesses testified publicly about many of the details to which the victim herself testified.

---

public from the court room, admitting only such persons as may have a direct interest in the case."

[11]In *Commonwealth* v. *Blondin*, 324 Mass. 564, 571 (1949), cert. denied, 339 U.S. 984 (1950), the court held that G. L. c. 278, § 16A, did not require exclusion of counsel, witnesses, stenographers, court officers, and clerks, or a parent, husband, wife, guardian, or friend of the defendant, whose presence he desires. Later, in *Globe Newspaper Co.* v. *Superior Ct.*, 379 Mass. 846, 861, vacated and remanded on other grounds, 449 U.S. 894 (1980), *S.C.*, 383 Mass. 838 (1981), rev'd, 457 U.S. 596 (1982), the Supreme Judicial Court held that the statute required closure only during the testimony of the minor victims, not for the entire trial.

[12]Closure even for a portion of the trial violates a defendant's public trial right. By the time the United States Supreme Court held that it was unconstitutional, the statute on which the judge relied here had been narrowed so that it required closure only during the victim's testimony. See note 11, *supra.* See also *Owens* v. *United States*, 483 F.3d 48, 61 (1st Cir. 2007) ("The public trial guarantee has been considered so important that courts have reversed convictions or granted habeas relief where the courtroom was closed for the announcement of the verdict, *United States* v. *Canady*, 126 F.3d 352, 364 [2d Cir. 1997], cert. denied, 522 U.S. 1134 (1998), where a trial inadvertently ran so late one night that the public was unable to attend, *Walton* v. *Briley*, 361 F.3d 431, 433 [7th Cir. 2004], and where the trial was closed for the testimony of just one witness, *United States* v. *Thunder*, 438 F.3d 866, 868 [8th Cir. 2006]"); *Baran*, 74 Mass. App. Ct. at 295-296 (courtroom improperly closed during testimony of victims). In *Owens*, *supra* at 66, the court held that the defendant's right to a public trial was violated when the courtroom was closed during one day of jury selection.

There was no consideration of alternatives and there was no statement of reasons other than a reference to the statute itself. That was not enough. See *Commonwealth* v. *Martin*, 417 Mass. 187, 194-196 (1994).

A conclusion that the defendant's right to a public trial was violated does not lead us to the substantial risk analysis discussed, *supra*. Though for intrinsic and for instrumental reasons we place enormous value on this right, it is virtually impossible to demonstrate concrete harm flowing from its violation. Accordingly, a violation is a structural error that relieves the defendant of the need to show prejudice in order to obtain a new trial. See *Waller* v. *Georgia, supra* at 49 n.9; *Owens* v. *United States*, 483 F.3d 48, 63 (1st Cir. 2007); *Commonwealth* v. *Martin, supra* at 196; *Baran*, 74 Mass. App. Ct. at 295-296

Notwithstanding its structural character, the right to a public trial, like other structural rights, can be waived. See *Commonwealth* v. *Burnett*, 428 Mass. 469, 476 (1998); *Mains* v. *Commonwealth*, 433 Mass. 30, 33 n.3 (2000). Waiver requires a sound rationale for closure and the defendant's knowing agreement. See *Commonwealth* v. *Williams*, 379 Mass. 874, 876 (1980). See also *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 340 n.1 (1994) (in light of *Williams*, defendant's waiver of his right to public trial is effective only if it is "knowing, intelligent and voluntary").[13] However, the defendant's assent

---

[13]The approach to the waiver question by the United States Court of Appeal for the First Circuit appears to turn on whether counsel's failure to object was a sound tactical decision or amounted to ineffective assistance of counsel. If the former, the right is waived; if the latter, a new trial is required without any inquiry into prejudice because the right is structural. See *Owens* v. *United States, supra*. Other United States Courts of Appeals have approached the waiver question differently. Four follow the Massachusetts rule that a valid waiver requires the defendant's knowing assent. See *Hutchins* v. *Garrison*, 724 F.2d 1425, 1431 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); *United States* v. *Canady*, 126 F.3d 352, 359 (2d Cir. 1997); *Walton* v. *Briley*, 361 F.3d 431, 434 (7th Cir. 2004); *Crawford* v. *Minnesota*, 498 F.3d 851, 855 (8th Cir. 2007). Five appear to view counsel's failure to object as sufficient. See *United States* v. *Sorrentino*, 175 F.2d 721, 723 (3d Cir. 1948), cert. denied, 338 U.S. 868 (1949); United States *vs.* Sosa-Padilla, U.S. Ct. App., No. 97-50201, slip op. at 1 (9th Cir. July 20, 1998); *In re Reed*, 161 F.3d 1311, 1316 (11th Cir. 1998), cert. denied, 526 U.S. 1052 (1999); Knighten *vs.* Commandant, U.S. Ct. App., No. 04-3436, slip op. at 3 (10th Cir. July 29, 2005); *United States* v. *Hitt*, 473 F.3d 146, 154-155 & n.8 (5th Cir. 2006), cert. denied, 549 U.S. 1360 (2007).

need not necessarily appear on the record. See *Commonwealth v. Wells*, 360 Mass. 846, 846 (1971).[14]

When considered in light of the foregoing principles, the component of the new trial motion dealing with closure presented a substantial question that required a hearing. Questions for exploration at that hearing include, without limitation, whether the courtroom was actually closed, whether counsel had a sound reason for declining to object, and whether the defendant agreed to the closure. Although the defendant's affidavits suggest that the courtroom was closed, the contemporaneous record is silent on the subject and the affiants have not been examined. Defense counsel's skillful, low-key handling of the prosecution witnesses, which this court noted in its earlier opinion, see *Edward*, 34 Mass. App. Ct. at 525, may have led him to think that a sparsely populated courtroom would be helpful to his cross-examination of the victim. And, although the defendant's affidavit says that counsel never discussed sidebar conferences with him, it does not expressly state the defendant objected to closure, or even that he did not agree to it. Those issues, at a minimum, require exploration.

5. *Summary.* In sum, the motion judge did not abuse his discretion in denying the motion without a hearing except for the issue involving a public trial. That issue is substantial and does require a hearing. Accordingly, the order denying the motion for a new trial is vacated and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[14]As is true of waiver in other contexts, there is no mandatory procedure for recording waiver of the right to a public trial. Compare, e.g., *Commonwealth v. Peterson*, 445 Mass. 782, 785-786 (2006) ("While we have held that a defendant's waiver of his right to indictment must be explicit . . . we have not held that the execution of a written waiver is constitutionally required for it to be effective"), and *Commonwealth v. Gaboriault*, 439 Mass. 84, 89 (2003) (validity of waiver of Miranda rights determined by examining totality of circumstances), with *Commonwealth v. Hardy*, 427 Mass. 379, 381-382 (1998) (certain procedures essential to valid waiver of right to trial by jury).