COMMONWEALTH vs. GLEN S. ALEBORD.

No. 09-P-1290.

Plymouth. October 8, 2010. - September 21, 2011.

Present: McHUGH, RUBIN, & HANLON, JJ.

*Constitutional Law,* Public trial, Freedom of speech and press, Jury, Waiver of constitutional rights. *Practice, Criminal,* Public trial, Empanelment of jury, Retroactivity of judicial holding, Waiver. *Jury and Jurors. Waiver.*

This court concluded that remand was required of a criminal defendant's motion for a new trial, on the ground that the exclusion from the courtroom, by a court officer acting under a safety policy, without the judge's knowledge and without objection by the defendant, of the defendant's friend, sister, and brother-in-law during jury empanelment constituted a closure that violated his constitutional right to a public trial, where the judge's findings regarding the closure were not sufficient to permit a determination whether the defendant knowingly waived his right to a public trial, and where the judge did not rule whether the de minimis exception applied to the closure. [434-440]

INDICTMENT found and returned in the Superior Court Department on December 29, 2000.

The case was tried before *Linda E. Giles*, J., and a motion for postconviction relief, filed on April 14, 2008, was heard by her.

*Chauncey B. Wood* for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

RUBIN, J. The trial of the defendant, Glen S. Alebord, took place from February 3 to February 5, 2004. He was convicted by a jury of murder in the second degree; we consolidated his direct appeal and the appeal from the denial of his motion for a new trial, and his conviction was affirmed. See *Commonwealth v. Alebord*, 68 Mass. App. Ct. 1 (2006). The Supreme Judicial Court denied further appellate review on March 1, 2007. *Commonwealth v. Alebord*, 448 Mass. 1105 (2007). After the United

States Court of Appeals for the First Circuit decided *Owens* v. *United States*, 483 F.3d 48 (1st Cir. 2007), the defendant brought the instant second motion for postconviction relief, arguing that he was deprived of his constitutional right to a public trial because the public was excluded from the jury selection portion of his trial.

*Proceedings below*. The motion judge, who was also the trial judge, held an evidentiary hearing and found that the defendant's trial was held in the second criminal session of the Brockton courthouse of the Plymouth County Division of the Superior Court Department, a courtroom that accommodated sixty people seated on the benches along the back and one side of the courtroom or about eighty people standing wall-to-wall. The judge found that the third and fourth criminal sessions courtrooms are bigger than the second session, that each can seat about eighty people, and that those courtrooms were unused on the morning of jury impanelment, February 3, 2004. Seventy-two jurors were summoned for jury service on that day, and the entire venire was brought up to the second session courtroom for jury impanelment, which lasted about eighty minutes.

The judge found that the defendant's friend, his sister, and his brother-in-law were prevented from entering the courtroom by a court officer stationed by the only public entrance to the courtroom. The judge found that the court did not order the exclusion but that pursuant to what she described as "the court officers' safety policy, . . . members of the public other than venirepersons were not permitted to enter the courtroom if there was only standing room inside." The judge found that with seventy-two venire persons inside the second session courtroom there were no seats available for the defendant's friend and relatives, and found that there was nothing in the record showing that seats became available in that courtroom during the jury impanelment process. She found that the defendant's attorney had no knowledge of anyone being excluded from the courtroom "at any time."

The judge concluded that the courtroom was not closed for constitutional purposes because she did not exclude members of the public for an indiscriminate reason or time period, but rather that three members of the public unknown to the court officers

were not permitted by them to enter the courtroom for safety reasons. Second, she concluded that because of the courtroom's finite capacity, reasonable restrictions on general access were permissible, and that the venire itself was composed of members of the public who were able to observe the impanelment.

The judge also concluded that even if a closure had taken place, the defendant had waived his objection by failing to object at trial to the closure. She also found that, in any event, the defendant had not made a showing that there was sufficient space in the courtroom to permit his friend and relatives to be seated safely inside the courtroom or that the larger courtroom would have afforded a solution to the problem by allowing those individuals to sit apart from the venire.

*Discussion.* During the pendency of this appeal, the Supreme Judicial Court decided *Commonwealth* v. *Cohen (No. 1),* 456 Mass. 94 (2010) *(Cohen).* As the court explained there, the right to a public trial rests upon two different provisions of the Bill of Rights. *Id.* at 106. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." The public trial right has been held by the United States Supreme Court to extend beyond the accused, and it may be invoked under the First Amendment to the United States Constitution as well. See *Press Enterprise Co.* v. *Superior Ct.,* 464 U.S. 501, 508 (1984).

In 1984, the Supreme Court held that the voir dire of prospective jurors must be open to the public under the First Amendment. See *id.* at 510. That same year in *Waller* v. *Georgia,* 467 U.S. 39, 46 (1984), the Supreme Court held that the public trial right under the Sixth Amendment extended to proceedings beyond the portion of the trial at which actual proof is introduced and tested; that case addressed a pretrial suppression hearing, which the Court held was required to be open to the public. The Court stated, "[T]here can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and the public." *Ibid.*

In the evidentiary hearing on this new trial motion, the defendant's trial counsel, who is an experienced trial attorney, testified

that he was aware at the time of the trial of a "standard practice" of closing the courtroom to the public during jury impanelment in the second criminal session of the Brockton courthouse. As described above, the judge found that she had not been informed during the trial that specific individuals were turned away at the courtroom door. At trial, counsel did not object to the closing of the courtroom, nor was such an issue raised on appeal or in the defendant's first new trial motion.

In *Owens* v. *United States*, 483 F.3d at 66, the United States Court of Appeals for the First Circuit held that facts not unlike those here amounted to a violation of a defendant's right to a public trial under the Sixth Amendment.[1] In *Presley* v. *Georgia*, 130 S. Ct. 721, 724 (2010), the United States Supreme Court explicitly stated that closure of jury voir dire to the public violates the Sixth Amendment.

There can be no doubt that, unless the court officer's action was within some independent exception, the courtroom in this case was "closed" in the constitutional sense. The fact that a court officer, not the judge, prevented the defendant's friend and relatives from entering the courtroom during jury selection does not alter this. As the Supreme Judicial Court made clear in *Cohen*, 456 Mass. at 108, "a courtroom may be closed in the constitutional sense without an express judicial order." In that recent case, the Supreme Judicial Court held that court officers' closure of a courtroom pursuant to an established policy without the awareness of a judge nonetheless amounted to an unconstitutional closure of the courtroom. *Id.* at 109.[2]

Before a courtroom may be closed, "a judge must make a case-specific determination that closure is necessary." *Id.* at 107. In order for a courtroom closure to be held permissible, it

---

[1] The facts are not precisely the same. In *Owens*, the First Circuit stated that "[d]espite the growing number of seats vacated by dismissed jurors, . . . the marshals continued to bar Owens' family from the courtroom for the remainder of jury selection, which lasted an entire day." *Id.* at 54. As described above, the judge in this case found that "there is nothing in the record to suggest that seats ever became available" during the eighty-minute impanelment.

[2] Contrary to the conclusion of the judge, venirepersons are not members of the public in the relevant sense, so the presence of venirepersons in the courtroom does not mean it has not been closed for constitutional purposes. See *Presley*, 130 S. Ct. at 725 (reversing the defendant's conviction because the courtroom was closed to spectators during jury selection).

must satisfy four requirements: "[1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceedings, and [4] it must make findings adequate to support the closure." *Ibid.*

Where space does not permit members of the public to attend a portion of voir dire, it might amount to a sufficient interest to justify a closure of the courtroom. See *id.* at 112 (concluding that "lack of space to accommodate the general public due to the number of prospective jurors in the court room" is a "substantial" interest that might justify partial closure of a courtroom). Nonetheless, the "closure may be 'no broader than necessary to protect [the] interest' " that requires the closure. *Id.* at 113, quoting from *Waller,* 467 U.S. at 48. In this case, as in *Cohen,* "the record indicates that the judge did not make a particularized determination about available space for members of the public at the beginning of the empanelment proceedings." *Ibid.* Nor did she make findings about the breadth of the closure or reasonable alternatives. Of course, the point is not that the law requires a judge who is unaware of closure to make findings about it. Rather, as the Supreme Judicial Court explained in *Cohen,* it is that "[c]losure by policy runs counter to the requirement that a court make a case-specific determination before a closure of any part of a criminal proceeding constitutionally may occur." *Id.* at 114. Consequently, on the record before us, as in *Cohen* and *Owens,* the closure of the courtroom here did not satisfy the conditions set out in *Waller.*

The Commonwealth argues that we should affirm because the rule that the Sixth Amendment right to a public trial includes jury impanelment that was articulated in *Presley* and applied in *Cohen* should not be applied in this case where *Owens, Presley,* and *Cohen* were all decided after the judgment in this case became final.

The Supreme Judicial Court has announced that it will follow the retroactivity rule articulated in *Teague* v. *Lane,* 489 U.S. 288, 310-311 (1989) (plurality opinion), under which a "new rule" of constitutional law will not be applied retroactively. See

*Commonwealth* v. *Bray*, 407 Mass. 296, 300-301 (1990).[3] Rules that do apply retroactively are those that were "*dictated* by precedent existing at the time the defendant's conviction became final" (emphasis in original). *Id.* at 301, quoting from *Teague* v. *Lane*, 489 U.S. at 301. See *Commonwealth* v. *Clarke*, 460 Mass. 30, 34-35 (2011) (providing a detailed analysis of when under *Teague* a "new rule" has been created).

To be sure, here, the judge did not at trial have the benefit of *Presley* or *Owens*. In *Presley*, however, the Supreme Court held that the exclusion of the public from jury selection violated the Court's "clear [Sixth Amendment] precedents." 130 S. Ct. at 722. The Supreme Court issued *Presley* in a summary disposition without oral argument. It stated specifically that the rule was "so well settled that the Sixth Amendment right extends to jury voir dire that this Court may proceed by summary disposition." *Id.* at 723-724. See *Commonwealth* v. *Downey*, 78 Mass. App. Ct. 224, 228 n.9 (2010). While Justice Thomas, joined by Justice Scalia, dissented from that view, *Presley*, *supra* at 725-727, in the face of the announcement by the Supreme Court majority that the question in *Presley* was "well settled" since 1984, we are compelled to conclude that *Presley* did not announce a "new rule."[4] Rather, the Supreme Court has told us that the rule that a defendant's public right to trial under the Sixth Amendment extends to jury voir dire was, at the time the defendant's conviction became final in 2007, not merely "dictated by" Supreme Court precedent but "well settled" by it. See *id.* at 723-724.

The Commonwealth also argues that the closure, to which, again, there was no objection at trial, created no substantial risk

---

[3]That court has recently expressly reserved the question whether a broader retroactivity rule might apply as a matter of State law. See *Commonwealth* v. *Clarke*, 460 Mass. 30, 34 n.7 (2011).

[4]In *Owens*, 483 F.3d at 66, the First Circuit, in a collateral challenge to a 1997 Federal conviction, applied retroactively the Sixth Amendment rule that jury selection could not be closed to the public. *Owens* was decided in 2007 even before *Presley*, and *Teague* v. *Lane* controlled the question of retroactivity. Had the First Circuit concluded that the rule prohibiting closure of the courtroom during jury selection was a "new rule" within the meaning of *Teague*, it could not properly have applied the rule in the case before it. Indeed, the *Owens* court held that another of the claims of the defendant was barred by the retroactivety rule of *Teague* v. *Lane*. *Id.* at 70.

of a miscarriage of justice. "Denial of a defendant's Sixth Amendment right to a public trial is a structural error that is not susceptible to harmless error analysis. [*Cohen*, 456 Mass.] at 105, citing *Commonwealth* v. *Baran*, 74 Mass. App. Ct. 256, 296 (2009). Because we place such value on the right to public trial and because it is virtually impossible to demonstrate concrete harm flowing from a violation of that right, a violation relieves the defendant of the need to show prejudice in order to obtain a new trial. See *Commonwealth* v. *Edward*, 75 Mass. App. Ct. 162, 173 (2009)." *Commonwealth* v. *Downey*, 78 Mass. App. Ct. at 228-229. We held therefore in *Edward* — a case involving a new trial motion brought fifteen years after trial and more than thirteen years after the defendant's conviction was affirmed on direct appeal — that "[a] conclusion that the defendant's right to a public trial was violated does not lead us to the substantial risk [of a miscarriage of justice] analysis" that would be involved in assessing other errors that, like this one, were not timely raised. 75 Mass. App. Ct. at 173. See also, e.g., *Owens*, 483 F.3d at 64-65 & n.13, quoting from *Strickler* v. *Greene*, 527 U.S. 263, 282 (1999) (holding that, in a collateral challenge to a conviction, a defendant need not show prejudice arising from counsel's failure to object to closure at trial on public trial right grounds in order to obtain relief under the applicable "cause and prejudice" test).

Nonetheless, "[a]lthough denial of the right to public trial is a structural error, 'we do look to whether the defendant raised [the] issue in a timely manner because "the right to a public trial, like other structural rights, can be waived." ' [*Cohen*, 456 Mass.] at 105-106 (internal citations omitted)." *Downey*, 78 Mass. App. Ct. at 230. See *Commonwealth* v. *Grant*, 78 Mass. App. Ct. 450, 458-460 (2010). "While neither a written waiver nor oral colloquy is required, and the defendant's assent to waiver need not necessarily appear on the record, the burden is on the Commonwealth to establish that the defendant knowingly waived his right to public trial either personally or through counsel." *Downey*, 78 Mass. App. Ct. at 230.

The judge in this case determined that the defendant did not object to the closure of the courtroom, and concluded on that basis that his claim was waived. Silence alone, however, is not

sufficient to demonstrate a knowing waiver. See *Edward*, 75 Mass. App. Ct. at 173 n.13 (contrasting the "Massachusetts rule" that waiver of the public trial right requires "the defendant's knowing assent" with other jurisdictions that "view counsel's failure to object as sufficient"). A remand therefore is required so that the judge may consider in the first instance whether the public trial right was knowingly waived at trial in this case. Although there was testimony at the evidentiary hearing bearing upon the question, the judge's factual findings are not sufficient to allow us to make a determination on our own whether there was such a waiver.

Further, as the defendant notes, in *Cohen*, 456 Mass. at 109, the Supreme Judicial Court indicated that a defendant's Sixth Amendment rights are not violated where a closure can "be characterized as so trivial or de minimis as to fall entirely outside the range of 'closure' in the constitutional sense."

The judge acknowledged that "[t]he right to be tried in open court is not trammeled by a short, inadvertent, trivial courtroom closure," but did not rule whether the de minimis exception applied in this case. Particularly since the scope of this de minimis exception has not yet been addressed in any decision of a court of the Commonwealth, and in light of the fact that a remand is in any event required, we think it prudent to allow the motion judge to consider, after full briefing, both its scope and whether the facts of this case might fall within this exception. We emphasize that we express no opinion on either question; there has been some debate after *Presley* about the first. See, e.g., *Owens* v. *United States*, 483 F.3d at 63 (concluding that a closure was not trivial because it "was not a mere fifteen or twenty-minute closure; rather, Owens' trial was allegedly closed to the public for an entire day while jury selection proceeded"); *United States* v. *Agosto-Vega*, 617 F.3d 541, 548 (1st Cir. 2010) (concluding, after *Presley*, that a closure was not trivial); *United States* v. *Gupta*, 650 F.3d 863, 872 (2d Cir. 2011) ("[A]lthough the district court's exclusion of [the defendant's] brother and girlfriend during voir dire failed to meet the four-factor test set forth in *Waller* [and now *Presley*], the exclusion was too trivial to implicate [the defendant's] Sixth Amendment right to a public trial"); *id.* at 874-876 (Parker, J., dissenting) (unlike in prior

triviality cases where "the closure lasted only for part of voir dire and/or was limited to certain spectators, and in many instances the closure was inadvertent . . . , the intentional, unjustified, and undisclosed closure of an *entire* voir dire is necessarily a non-trivial structural error that violates the Sixth Amendment"). On remand the judge may also hold a further evidentiary proceeding should she determine it is necessary for her to decide any or all of the questions before her.[5]

The order denying the motion for new trial is therefore vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[5]The judge's findings on remand could also obviate the need to address the defendant's ineffective assistance of counsel claim. Consequently, we do not address it further here.