Brassard, Raymond J., J.
On April 20, 2001, ajuiy convicted defendant Edmund LaChance (“LaChance”) of aggravated rape, kidnapping, indecent assault and batteiy, and assault with a dangerous weapon. The case is now before the court on LaChance’s motion for a new trial. For the reasons set forth below, the motion is DENIED.[1]
BACKGROUND
LaChance alleges that during the jury empanelment for his 2001 trial, he witnessed a court officer walk up to his family and instruct them to leave the courtroom consistent with courthouse policy then in effect.[2] LaChance has moved for a new trial contending that the court officer’s action violated his right to a public trial.
Although almost ten years have passed since his conviction, this is the first time that LaChance raises a public trial right argument. He did not address the issue when he filed two motions for a required finding of not guilty during his 2001 trial or when he appealed the juiy’s guilty verdict immediately after his conviction. The argument was also absent in two motions for a new trial filed in 2003 and 2004 respectively. Based on this procedural history, the Commonwealth argues that LaChance’s right to assert a Sixth Amendment violation was procedurally waived. The court agrees.
DISCUSSION
I. Waiver of Public Trial Claims
Generally, when a defendant files a motion for a new trial, any grounds that could have been but were not raised at trial or on direct appeal are considered to be waived. Commonwealth v. Chase, 443 Mass. 293, 297 (2001); see also Mass.R.Crim.P. 30(c)(2). This rule is meant to “ensure! 1 the finality of convictions by eliminating piecemeal litigation, which would unfairly consume public resources without any corresponding benefit to the administration of justice.” Chase, 443 Mass. at 297. Public trial claims would appear to be subject to this well-established framework. Nevertheless, LaChance, citing Commonwealth v. Edward and its progeny, asserts that the waiver doctrine is applied differently in public trial right cases. See 75 Mass.App.Ct. 162 (2009); see also Commonwealth v. Alebord, 80 Mass.App.Ct. 432, 437-39 (2011); Com *554 monwealth v. Lavoie, 80 Mass.App.Ct. 546 (2011), further appellate review granted, 461 Mass. 1101 (November 30, 2011). The court disagrees.
In Edward, the defendant brought a new trial motion fifteen years after trial and more than thirteen years after his conviction was affirmed on direct appeal. 75 Mass.App.Ct. at 163. The Court, however, held that the delay in moving for a new trial alone did not result in the waiver of the defendant’s claim. Id. at 165, 173. Rather, it concluded that a waiver analysis required the assessment of whether at the time the closure occurred the defendant knowingly, voluntarily, and intelligently agreed to the closure. Id. at 173; see also Alebord, 80 Mass.App.Ct. at 437-39 (following Edward and observing that the defendant’s failure to raise the issue at trial, on direct appeal, or in his first new trial motion did not result in the waiver of his public trial claim).
Appeals Court decisions subsequent to Edward have further defined the concept of knowing, voluntary and intelligent waiver. They indicate that waiver occurs only if the defendant: (1) was aware of his public trial right; and (2) understood that the closure implicated the right. See Commonwealth v. Grant, 78 Mass.App.Ct. 450, 458-59 (2010) (in remanding case, noting that trial judge did not inform the defendant of his right to a public trial and that the record was unclear as to whether trial counsel so informed the defendant); Lavoie, 80 Mass.App.Ct. at 553-56 (finding, despite counsel’s tactical choice not to object, no waiver because counsel did not discuss the right to a public trial with the defendant and there was no conversation between them regarding the exclusion of the defendant’s family from the courtroom); see also Commonwealth v. Downey, 78 Mass.App.Ct. 224, 230 (2010).
Based on these Appeals Court cases, LaChance argues he did not waive his public trial claim. According to his affidavit, at the time of the empanelment, LaChance did not know that the court officer’s behavior was potentially a public trial right violation and his trial attorney never informed him of his public trial right. He, therefore, maintains that he did not knowingly, voluntarily, or intelligently waive his public trial right.
LaChance’s reliance on the Edward line of cases is not without basis. They certainly suggest that public trial claims should be treated differently. Nevertheless, the court believes that the Supreme Judicial Court has come to a different conclusion. See Commonwealth v. Dyer, 460 Mass. 728, 734-37 & n.7 (2011).
In Dyer, the defendant argued on direct appeal that the trial judge violated his Sixth Amendment right by conducting the individual voir dire in her lobby. Id. at 734. Like LaChance, the defendant asserted that he never waived his right to a public trial and that his counsel was ineffective for failing to object to the closure. Id. at 734-35. Nonetheless, the Court found that the defendant’s claim was waived because he failed to preserve the issue through objection at trial. Id. at 735-37.
In contrast to Edward, the decision contains no discussion of whether the defendant knowingly, intelligently, and voluntarily waived his right in the sense described by the Appeals Court. See Grant, 78 Mass.App.Ct. at 459-59. Rather, the Court’s analysis is confined to whether the defendant was aware of the closure and capable of obr jecting to it. Dyer, 460 Mass. 728 at 736-37. Consequently, the decision, which tellingly cites Commonwealth v. Horton, 434 Mass. 823 (2001), provides strong indication that the standard waiver doctrine is applicable to public trial claims. See Id. 735 n.7.[3]
Significantly, a recent Rule 1:28 decision suggests that, as a result of Dyer, the Appeals Court is no longer applying Edward in the same fashion. See Commonwealth v. Krzanouwski, 2011 Mass.App. Unpub. LEXIS 1181 at *4-5. In Krzanouwskt the court, citing Dyer, held that a defendant had waived his public trial right claim because he had failed to object to the closure during trial and in so doing consented to what occurred. Id. The case arose from the trial judge’s decision to exclude all but attorneys from entering the courtroom during the minor victim’s testimony. Id.
Here, LaChance witnessed a court officer remove his family members from the court room during juiy selection. Nevertheless, he did not object to the removal at the time of empanelment, during the balance of his trial, on appeal, or in connection with his two prior motions for a new trial. Given these circumstances, the court concludes that LaChance waived his public trial claim. See Dyer, 460 Mass. at 728, 734-37 & n.7; Horton, 434 Mass. at 831-33.[4]
II. Review of Waived Public Trial Claims
When waiver occurs, review of the claim is limited to the question of whether the error asserted likely resulted in a “substantial miscarriage of justice.” See Chase, 443 Mass. at 299; Dyer, 460 Mass. at 737 & n.7; Horton, 434 Mass. at 832. Under this standard, a court will only overturn a verdict if, taking the evidence and case as a whole: (1) an error occurred; (2) the defendant was prejudiced by the error; (3) the error, in the context of the entire trial, materially influenced the verdict; and (4) counsel’s failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision. See Commonwealth v. Randolph, 438 Mass. 290, 298 (2002).
LaChance argues that the substantial miscarriage of justice standard is applied differently for public trial claims. In particular, he contends that a defendant claiming a public trial right violation need not prove prejudice or material influence on the verdict. Citing Owens v. United States, he asserts that, when applying the standard to public trial claims, the court must presume prejudice and material influence because a public trial violation is a structural error. See 483 F.3d 48, 66 (1st Cir. 2007) (“Because denial of a public trial is structural error, it would be impossible for [a defen *555 dant] to establish actual prejudice and as such it must be presumed”). Based on this, LaChance argues that he has demonstrated that he likely suffered a substantial miscarriage of justice because a closure of constitutional magnitude occurred and because his trial and appellate attorneys had no tactical reason for failing to object to the closure. The court disagrees.
Dyer makes clear that, despite the structural character of public trial violations, prejudice and material influence are not presumed when evaluating public trial claims under the substantial miscarriage of justice standard. Significantly, the Court determined that no prejudice resulted from the closure even though it found that the defendant’s public trial right may have been violated. Dyer, 460 Mass. at 736-37. In reaching this conclusion, the Court noted that the substantial miscarriage of justice standard “may appear to conflict with astructural error analysis, but, on closer inspection it does not.” Id. 735 n.7. It also observed that incorporation of the structural error analysis into the evaluation of waived claims “would require us to ignore — at great cost to the public interest in the finality of verdicts — the established rule that public trial rights may be waived.” Id.
Applying the substantial miscarriage of justice standard, the court concludes that LaChance has failed to show that he is entitled to a new trial. LaChance’s affidavits and motion do not indicate that he suffered any prejudice as a result of his family’s removal from the court room. See Dyer, 460 Mass. at 737 (rejecting un-preserved claim where defendant identified “no factors” suggesting likelihood that miscarriage of justice resulted from closure); Horton, 434 Mass. 832-33 (same). Nor do the affidavits identify any unfairness that would have been prevented had his family been present during the voir dire. Thus, “in light of the defendant’s consent to the procedure, his presence throughout the voir dire, and the fact that the less public setting for the voir dire in all likelihood helped rather than harmed the defendant, [the court] find[s] no prejudice to the defendant from the setting in which this voir dire was conducted.” Horton, 434 Mass. at 833.
ORDER
For the foregoing reasons, LaChance’s motion for a new trial is DENIED.

Pursuant to Mass.R.Crim.P. 30(c)(3), the court finds that an evidentiary hearing is unnecessary because there is no substantial issue raised by LaChance’s motion or his affidavits. Accordingly, the court has decided the motion on the papers.

LaChance supports his allegations with his own affidavit and affidavits from his mother, uncle, trial attorney, and appellate attorney. For the purposes ofthis decision, the court assumes that a closure occurred as described in these affidavits.

In Horton, the defendant argued that his Sixth Amendment right was violated when the judge conducted individual voir dire in the jury deliberation room. 434 Mass. at 831. The defendant argued that his counsel was ineffective in failing to object to the violation. Id. The court, however, concluded that the defendant had waived his claim because he did not object to the judge’s actions and therefore failed to preserve the issue for appellate review. Id. at 832.

Alternatively, LaChance asserts that he is entitled to take advantage of the “clairvoyant exception” to procedural waiver. The court disagrees. The clairvoyant exception applies to errors of a constitutional dimension “when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial or direct appeal to afford the defendant a genuine opportunity to raise his claim at those junctures of the case.” Commonwealth v. Rembiszewski, 391 Mass. 123, 126 (1984); see also Commonwealth v. Randolph, 438 Mass. 290, 295 (2002). LaChance cannot take advantage of the exception because it was well established prior to his trial that the right to a public trial extended to the jury voir dire. See Commonwealth v. Gordon, 422 Mass. 816, 823 (1996) (”[T]he Sixth Amendment to the United States Constitution secures the defendant’s right to a public trial. The guarantees of open public proceedings in criminal trials cover proceedings for the voir dire examination of potential jurors concerning their qualifications to serve.”); Presley v. Georgia, 130 S.Ct. 721, 723-24 (2010) (stating that the rule was “so well settled that the Sixth Amendment right extends to jury voir dire that this Court may proceed by summary disposition”). Thus, the right to object on this Sixth Amendment ground was not only foreshadowed at the time of trial and appeal, but also fully developed and available. See Commonwealth v. Smith, 460 Mass. 318, 320 (2011) (“[I]t should be a very rare situation where, following the direct appeal, relief is granted based on a claim of error that either was or could have been raised at the trial or in the direct appeal”).