COMMONWEALTH *vs.* JOSEPH DOWNEY.

No. 08-P-1565.

Suffolk. September 14, 2010. - November 8, 2010.

Present: GRASSO, SMITH, & RUBIN, JJ.

*Practice, Criminal,* Public trial. *Constitutional Law,* Public trial, Waiver of constitutional rights. *Waiver. Jury and Jurors.*

Discussion of a criminal defendant's right to a public trial protected by the Sixth Amendment to the United States Constitution. [228-229]

At a criminal trial, a Superior Court judge's exclusion of the public from the court room during individual voir dire questioning of two jurors regarding their criminal offender record information (CORI) records, and subsequent exclusion of the public, other than the defendant's family, from the court room during voir dire of twenty-one additional prospective jurors, constituted a closure in violation of the defendant's right to a public trial under the Sixth Amendment to the United States Constitution, where a knowing assent to waiver by the defendant could not be discerned from the equivocal acquiescence expressed by defense counsel after objecting to the closure during the CORI inquiry, or from defense counsel's more emphatic and persistent objection during the partial closure for voir dire of additional prospective jurors; and where no overriding interest nor even substantial reason could be discerned that was likely to be prejudiced by opening the court room, a reasonable alternative to closing the court room was readily available, and the judge made no findings to support closure; accordingly, the defendant was entitled to a new trial. [229-232]

INDICTMENT found and returned in the Superior Court Department on March 24, 1998.

After review by this court, 65 Mass. App. Ct. 547 (2006), the case was tried before *Patrick J. Riley,* J.

*Kevin S. Nixon* for the defendant.

*Paul B. Linn,* Assistant District Attorney (*Dean A. Mazzone,* Assistant Attorney General, with him) for the Commonwealth.

GRASSO, J. A jury found the defendant guilty of murder in the second degree in connection with the stabbing death of James

Murphy in 1997.[1] Among many claimed errors, the defendant argues that his conviction must be reversed because the closure of the courtroom during jury empanelment violated his right to a public trial guaranteed by the Sixth Amendment to the United States Constitution. See *Presley* v. *Georgia*, 130 S. Ct. 721, 724 (2010). We are constrained to agree. See *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94, 105-106 (2010).

1. *Background.* The courtroom closure at issue occurred at the commencement of the afternoon session on the second day of jury empanelment.[2] After one and one-half days of painstaking individual voir dire of over 100 potential jurors, the Commonwealth and the defendant agreed on the selection of the sixteenth and last juror to be seated just prior to the luncheon recess.[3] Before recessing, the prosecutor advised the judge that he had not completed criminal offender record information (CORI) checks on the five jurors chosen that morning and that he wanted the judge to make inquiry of three jurors who had failed to reveal prior arrests or experiences with the law.[4] See *Commonwealth* v. *Cousin*, 449 Mass. 809, 815-816 (2007), cert. denied, 553 U.S. 1007 (2008); *Commonwealth* v. *Hampton*, 457 Mass. 152, 165 (2010). The judge indicated that he would address the matter at 2 P.M.

The afternoon session commenced. The court reporter's transcript indicates "AFTERNOON SESSION (Courtroom closed)."

---

[1]The trial that is the subject of this appeal is the defendant's second. In *Commonwealth* v. *Downey*, 65 Mass. App. Ct. 547, 548-550 (2006), we affirmed an order allowing the defendant's motion for a new trial because his right to counsel had been compromised when his trial attorney surreptitiously wore a microphone that recorded privileged conversations that were later broadcast in the media.

[2]The defendant's broader claim that the trial judge closed the courtroom for a more extensive period cannot be resolved solely from the transcript of voir dire proceedings and must be resolved in the context of a motion for a new trial. See *Commonwealth* v. *Cohen (No. 1)*, *supra* at 107-108 (burden on defendant to demonstrate that public was excluded from his trial).

[3]The record is clear that at the outset of empanelment the judge was sensitive to the right of the public to be present in court notwithstanding concerns about space due to the large number of potential jurors in the venire ("[D]o we have room? . . . You can stay. I'm not throwing anyone out"; "I know a number of you are standing . . . bear with me").

[4]The jurors had not yet been sworn and were being held in a room outside the courtroom pending completion of the panel of sixteen.

At the very outset of the afternoon proceeding, upon the prosecutor's presentation of CORI records to the judge, the following exchange occurred:

DEFENSE COUNSEL: "Your Honor, just one objection to the court being closed . . . it's a public trial."

JUDGE: "I understand that, but the option is to either bring the juror that we're going to bring down[5] and inquire about their CORI record at sidebar or do it from the witness stand.

"If you want to do it at sidebar, then the people can sit in the back, but they're not going to be able to hear the juror's private information and private history."

DEFENSE COUNSEL: "Okay, Your Honor."

JUDGE: "That's the only reason why I have the public sent out so that we could in open court discuss the potential issues relating to that criminal record."[6]

DEFENSE COUNSEL: "Fine, Your Honor. That's fine."

The judge then conducted further individual voir dire of two of the selected jurors regarding their CORI records. After voir dire of the first, the judge was satisfied with his responses and declared the juror to remain indifferent. Over defense counsel's objection, the judge permitted the Commonwealth to exercise a peremptory challenge.[7] The judge then proceeded to question

---

[5]General Laws c. 234, § 28, provides that certain voir dire questions of a potential juror "shall be conducted individually and outside the presence of other persons about to be called as jurors or already called." Because the selected jurors were being kept in a separate room, the plan was to bring each juror down to the courtroom for further individual voir dire.

[6]General Laws c. 6, § 172, restricts the dissemination of CORI records.

[7]The basis of defense counsel's objection was that jury empanelment was already complete. Defense counsel had previously sought to prevent the Commonwealth from accessing the CORI records of potential jurors at all, but the judge had denied that motion. See *Commonwealth* v. *Cousin, supra,* decided subsequent to the defendant's trial.

the second juror regarding her CORI records. Both the judge and counsel were satisfied that the juror remained indifferent, and she remained part of the chosen panel. Because one of the two previously selected jurors had been stricken, the panel now numbered fifteen, and an additional juror needed to be chosen.

Before proceeding further, defense counsel asked, "Can the family come back?" The judge replied, "Sure. We've got one more juror to [e]mpanel."

Prior to resuming voir dire to fill the vacant seat, at sidebar but with the new jury venire present in the courtroom, the prosecutor disclosed that one of the venire may have overheard something in the elevator earlier that day. As the discussion proceeded, the following exchange ensued:

DEFENSE COUNSEL: "Your Honor, the court should be open now. . . . This is an open trial whether it's jurors or not."

JUDGE: "But traditionally when we're inquiring into jurors' personal private background, which we're doing, it's done at sidebar and not in open court. . . . [After response from counsel] All right, all right. You can — fine. You want to bring the family in?"

DEFENSE COUNSEL: "Yes."

JUDGE: "Is that what you're asking?"

DEFENSE COUNSEL: "Yes."

JUDGE: "All right. They can sit down in the back."

CLERK: "We've been closing the courtroom to all spectators up until now. We've been telling people . . . ."[8]

DEFENSE COUNSEL: "This is a constitutional violation. . . . This is a public trial."

JUDGE: "Let's not get overly concerned. This is

---

[8]See note 3, *supra.*

> the first time you've brought it to my attention that you wanted to have somebody in here. . . . I said that if you want to have his family members come in and sit down, they can sit down. . . . All right?"

DEFENSE COUNSEL: "I'm not just raising a frivolous point. The First Circuit last week reversed on this very issue."

JUDGE: "That's the First Circuit."

DEFENSE COUNSEL: "Well, it's on a constitutional ground, the right to an open trial."

Sidebar ended, and the judge and the parties then proceeded to conduct individual voir dire of twenty-one more potential jurors until the final juror was chosen. At no time during the remainder of the voir dire did the judge rescind or modify his order excluding all but the defendant's family from the courtroom.

2. *Discussion.* It is no longer open to dispute that the Sixth Amendment "right to a public trial in criminal cases extends to the jury selection phase of trial, and in particular the voir dire of prospective jurors." *Presley* v. *Georgia*, 130 S. Ct. at 723.[9] The public trial right applies to jury selection proceedings because they are "a crucial part of any criminal case." *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. at 106, quoting from *Owens* v. *United States*, 483 F.3d 48, 63 (1st Cir. 2007). Denial of a defendant's Sixth Amendment right to a public trial is a structural error that is not susceptible to harmless error analysis. *Id.* at 105, citing *Commonwealth* v. *Baran*, 74 Mass. App. Ct. 256, 296 (2009).

---

[9]The trial judge did not have the benefit of *Presley*, which was decided after the trial in this case. In a per curiam decision, the Supreme Court held that the applicability of the public trial right to jury voir dire was "well settled" under the prior precedent of *Press-Enterprise Co.* v. *Superior Ct.*, 464 U.S. 501, 505 (1984) (juror selection process is itself a matter of importance, not simply to the adversaries, but to the criminal justice system, and under the First Amendment to the United States Constitution the right to public trial in criminal cases extends to voir dire of prospective jurors), and *Waller* v. *Georgia*, 467 U.S. 39, 46 (1984) (Sixth Amendment right to public trial extends beyond actual proof at trial and is no less protective of public trial than First Amendment right of the press and public). See *Presley* v. *Georgia*, *supra* at 724.

Because we place such value on the right to public trial and because it is virtually impossible to demonstrate concrete harm flowing from a violation of that right, a violation relieves the defendant of the need to show prejudice in order to obtain a new trial. See *Commonwealth* v. *Edward*, 75 Mass. App. Ct. 162, 173 (2009).

"In claiming that his Sixth Amendment right to a public trial was violated, '[t]he burden is clearly on the defendant to demonstrate that the public was excluded from his trial.' " *Commonwealth* v. *Cohen (No. 1), supra* at 107-108, quoting from *Commonwealth* v. *Williams*, 379 Mass. 874, 875 (1980). Where, as here, the contemporaneous record of the voir dire proceeding establishes what occurred, we exercise our own judgment on the ultimate factual as well as legal conclusions regarding the defendant's constitutionally based claim that the public was excluded from his trial. See *id.* at 105. See also *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 492 (1985) (defendant challenging constitutional adequacy of guilty plea may choose to stand on contemporaneous record without extraneous evidence).[10]

A. *Closure of the courtroom.* The defendant has satisfied his burden of establishing that the courtroom was closed during jury voir dire. The transcript of the jury empanelment demonstrates that the judge (1) excluded the public from the voir dire questioning regarding CORI records that began on the second afternoon of empanelment, and (2) excluded the public other than the defendant's family from the ensuing voir dire of twenty-one prospective jurors to fill the newly vacated seat arising from the Commonwealth's peremptory challenge. In his own words, the judge acknowledges that he excluded the public from the courtroom during the CORI record questioning, that he did so to facilitate questioning from the witness stand rather than at sidebar, and that he continued to exclude members of the public other than the defendant's family during the remainder of the voir dire to fill the vacant seat. These intentional exclusions cannot qualify as inadvertent, trivial, or de minimis so as to fall outside the range of closure for Sixth Amendment purposes.

---

[10]The Commonwealth does not argue that the transcript inaccurately records what transpired during voir dire.

See *Commonwealth* v. *Cohen (No. 1), supra* at 108-109. We proceed then to consider whether the defendant waived his right to public trial.

B. *Waiver.* Although denial of the right to public trial is a structural error, "we do look to whether the defendant raised [the] issue in a timely manner because 'the right to a public trial, like other structural rights, can be waived.' " *Id.* at 105-106 (internal citations omitted). While neither a written waiver nor oral colloquy is required, and the defendant's assent to waiver need not necessarily appear on the record, the burden is on the Commonwealth to establish that the defendant knowingly waived his right to public trial either personally or through counsel. See *Commonwealth* v. *Adamides,* 37 Mass. App. Ct. 339, 340 n.1 (1994); *Commonwealth* v. *Edward, supra* at 173-174.

i. *The CORI record inquiry.* We reject the Commonwealth's contention that defense counsel's assertions "Okay" and "Fine" amount to a knowing waiver of the defendant's right to public trial. As noted earlier, at the very commencement of the afternoon session, defense counsel affirmatively objected on public trial grounds to the closing of the courtroom for the CORI records inquiry. The judge responded that he had done so to facilitate questioning from the witness stand and that even were the inquiry to be conducted at sidebar in an open courtroom, spectators would not be able to hear the juror's responses. Viewed in that context, defense counsel's responses "Okay, Your Honor" and "Fine, Your Honor" cannot bear the weight of waiver. While counsel's responses could signify his agreement with the judge's reasons for closing the courtroom, they could also signify nothing more than counsel's understanding of the judge's preference and acceptance of the judge's preference as a fait accompli. Even more importantly, counsel's words say nothing about the defendant's agreement to the waiver of his right to public trial. See *Commonwealth* v. *Edward, supra* at 173.

We are unable to discern in such equivocal acquiescence a knowing assent to waiver by the defendant of a right to a public trial that had just been invoked. See *Commonwealth* v. *Adamides, supra* at 340 n.1; *Commonwealth* v. *Edward, supra* at 173 n.13. On such muddled ground, the Commonwealth has failed to meet its burden of establishing the defendant's waiver of his constitutional right to public trial.

ii. *The subsequent voir dire.* Even more are we unable to discern any waiver by the defendant to the partial closure of the courtroom during the ensuing voir dire to fill the vacant seat that remained. Although in the face of defense counsel's objection the judge reluctantly agreed to open the courtroom to the defendant's family, the judge never reopened the courtroom to the general public. Indeed, when defense counsel emphatically and persistently continued to press the point in reliance on a recent opinion by the United States Court of Appeals for the First Circuit,[11] the judge continued to demur and express his disagreement with the view that the right to public trial encompasses jury voir dire. Review of the record during the ensuing voir dire of twenty-one prospective jurors fails to reflect any change in the judge's order excluding the general public.

C. *Permissible limitations on the right to public trial.* Although "the right to an open trial may give way in certain cases to other rights or interests," such as inhibiting disclosure of sensitive information, "[s]uch circumstances will be rare, . . . and the balance of interests must be struck with special care." *Waller* v. *Georgia,* 467 U.S. 39, 45 (1984). See *Presley* v. *Georgia,* 130 S. Ct. at 724; *Commonwealth* v. *Cohen (No. 1),* 456 Mass. at 111 (closure analysis of *Waller* extends to partial closure of courtroom in criminal trials). We conclude that neither the complete closure of the courtroom during voir dire of two jurors regarding CORI records nor the partial closure of the courtroom during the ensuing voir dire for a replacement juror met constitutional requirements. Indeed, we are hard pressed to see how even one of the four *Waller* factors was met in this case. See *Waller* v. *Georgia, supra* at 48 (identifying need for [1] overriding public interest, [2] narrowly tailored closure, [3] consideration of reasonable alternatives, and [4] judicial findings supporting closure). See also *Watters* v. *State,* 328 Md. 38, 45 (1992), cert. denied, 507 U.S. 1024 (1993) (when defendant objects, the public may only be constitutionally excluded from voir dire "pursuant to narrowly tailored order necessary to protect an overriding state interest").

Insofar as the voir dire questioning of the two jurors is concerned, we discern neither an "overriding interest" nor even a

[11]See *Owens* v. *United States,* 483 F.3d at 63.

"substantial reason"[12] that was likely to be prejudiced by opening the courtroom at that juncture[13]; the closure was far broader than necessary; a reasonable alternative to closing was readily available; and the judge made no findings to support closure. As the judge himself noted, the interest in protecting the confidentiality of the CORI records of the two jurors could have been accomplished effectively at sidebar with the public present. The convenience of questioning the jurors from the witness stand rather than at sidebar does not justify overriding the right to public trial. Moreover, we are aware of no justification whatsoever for closing the courtroom to the public at large during the ensuing voir dire for the replacement juror. In sum, violation of the defendant's right to public trial occurred, and the defendant is entitled to a new trial.

*Judgment reversed.*

*Verdict set aside.*

---

[12]When a closure is partial, a "substantial reason" rather than an "overriding interest" may suffice to justify the closure. See *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. at 111 & n.25.

[13]The judge was appropriately concerned with preventing the CORI records from being discussed in open court so that all present could hear. However, in extolling his preference for conducting the voir dire from the witness stand rather than at sidebar, the judge appears to have mistakenly equated the values protected by the right to public trial with the interests protected when inquiry regarding sensitive matters is done at sidebar in open court. While concerns regarding the disclosure of CORI records and other sensitive matters can be addressed at sidebar in an open courtroom, the values underlying the right to public trial can not be preserved when the courtroom is closed to the public.