## COMMONWEALTH *vs.* MATTHEW G. LAVOIE.

No. 09-P-838.

Middlesex. December 6, 2010. - October 3, 2011.

Present: COHEN, GRAHAM, & WOLOHOJIAN, JJ.

Further appellate review granted, 461 Mass. 1101 (2011).

*Constitutional Law,* Public trial, Freedom of speech and press, Jury, Waiver of constitutional rights, Assistance of counsel. *Practice, Criminal,* Public trial, Empanelment of jury, Waiver, Assistance of counsel. *Jury and Jurors. Waiver.*

A criminal defendant was entitled to the allowance of his motion for a new trial, where closure of the courtroom (regardless of whether it was full or partial) that resulted from the exclusion of his family during jury selection, in violation of his right to public trial under the Sixth Amendment to the United States Constitution, was a structural error, and where, although defense counsel was aware of the right to a public trial and did not object to the exclusion of the defendant's family, the defendant did not knowingly, intelligently, and voluntarily waive his right to a public trial. [550-556] WOLOHOJIAN, J., concurring. GRAHAM, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on May 31, 2001.

After review by this court, 67 Mass. App. Ct. 1114 (2006), a motion for a new trial, filed on December 31, 2007, was heard by *Kenneth J. Fishman,* J.

*Leslie W. O'Brien* for the defendant.

*Hallie White Speight,* Assistant District Attorney, for the Commonwealth.

COHEN, J. Four years after he was convicted of murder in the second degree, the defendant filed a motion for a new trial, claiming that his trial counsel had provided constitutionally ineffective assistance by failing to object to the closure of the courtroom during jury selection. The trial judge carefully considered the motion, conducting an evidentiary hearing that

spanned two days and involved testimony from six witnesses.[1] On April 2, 2009, the judge denied the motion in a detailed decision that did not have the benefit of significant appellate opinions that soon followed.[2] As it turned out, the judge's reasoning was prescient in some respects, but not in others. After independently applying current law to the judge's findings, we conclude that the courtroom closure violated the defendant's right to a public trial under the Sixth Amendment to the United States Constitution,[3] and, because the defendant did not waive that right, the denial of the defendant's motion for a new trial must be reversed.

*Background.* The judge's findings, supplemented by uncontested facts contained in the docket and other court records, may be summarized as follows. On December 16, 2003, a Superior Court jury found the defendant guilty of murder in the second degree in the shooting death of Westley Vaananen. Shortly thereafter, the defendant moved to set aside the verdict pursuant to Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), seeking the entry of a finding of not guilty or an order for a new trial. That motion was denied on June 21, 2004. On November 9, 2006, this court affirmed the defendant's conviction in an unpublished memorandum and order pursuant to our Rule 1:28. *Commonwealth* v. *Lavoie*, 67 Mass. App. Ct. 1114 (2006). The Supreme Judicial Court denied further appellate review on February 1, 2007. *Commonwealth* v. *Lavoie*, 448 Mass. 1103 (2007).

In the fall of 2007, the defendant became aware of a new

[1]The witnesses were a court officer assigned to the courtroom where the defendant's case was tried; the defendant's mother, father, and sister; the defendant's trial counsel; and the defendant himself.

[2]Of particular note, the judge's decision predated the following cases addressing the issue of the right to a public trial: *Presley* v. *Georgia*, 130 S. Ct. 721 (2010); *Commonwealth* v. *Cohen (No.1)*, 456 Mass. 94 (2010) (*Cohen*); *Commonwealth* v. *Baran*, 74 Mass. App. Ct. 256 (2009); *Commonwealth* v. *Edward*, 75 Mass. App. Ct. 162 (2009); *Commonwealth* v. *Wolcott*, 77 Mass. App. Ct. 457 (2010); *Commonwealth* v. *Downey*, 78 Mass. App. Ct. 224 (2010); *Commonwealth* v. *Grant*, 78 Mass. App. Ct. 450 (2010); *Commonwealth* v. *Alebord, ante* 432 (2011). As we decided in *Alebord, supra* at 437, the rule of *Presley* and *Cohen*, that the right to a public trial under the Sixth Amendment to the United States Constitution includes jury empanelment, is not a new constitutional rule and thus applies retroactively.

[3]As applicable to our courts through the Fourteenth Amendment to the United States Constitution. *Commonwealth* v. *Stetson*, 384 Mass. 545, 549 (1981).

Federal court decision addressing the constitutional implications of the exclusion of a defendant's family from the courtroom during jury selection.[4] After speaking to his own family and being reminded that they had been asked to leave the courtroom during jury selection, the defendant contacted his appellate counsel, who proceeded to file the motion for a new trial, pursuant to Mass.R. Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). Until this point, the defendant had never raised any issue concerning the exclusion of his family from the courtroom. It was not the subject of objection at trial; nor was it argued in his rule 25(b)(2) motion or in his direct appeal.

The defendant's trial was held over four weeks in November and December, 2003, in courtroom 12B in the East Cambridge courthouse of the Middlesex division of the Superior Court Department. Jury selection occurred over two days: Thursday, November 20, and Monday, November 24.[5] On Thursday, before the jury venire were brought in, court officers instructed the defendant's father, mother, and sister to leave the courtroom where they had been seated in the gallery, informing them that they would be permitted to return once the jury had been selected. As instructed, the family remained outside the courtroom for the entire day. When jury selection continued on Monday, the family members again were excluded by court officers. The selection process continued into Monday afternoon, when sixteen jurors (including alternates) finally were seated.

Courtroom security personnel excluded the defendant's family pursuant to a procedure they employed when the number of prospective jurors left no room for family members or other spectators to be seated at the beginning of the selection process. The judge had not been requested to issue an order removing the public from the courtroom during jury selection and was not made aware that this procedure was being used. In courtroom 12B, only eighty people could be seated in the gallery. Additional jurors sometimes were placed in one of the two jury

---

[4]The case in question was either the decision of the United States Court of Appeals for the First Circuit in *Owens* v. *United States*, 483 F.3d 48 (1st Cir. 2007), or the United States District Court decision in the proceedings after remand, *Owens* v. *United States*, 517 F. Supp. 2d 570 (D. Mass. 2007).

[5]Prospective jurors were not brought to that courthouse on Fridays.

boxes; but the other jury box was too close to the sidebar to permit the seating there of either prospective jurors or members of the public. Approximately eighty-two jurors were brought in on Thursday. There is no finding as to the number who were brought in on Monday.

As previously requested by the defendant and allowed by the judge, voir dire of prospective jurors included individual questioning at sidebar, as well as general questioning addressed to the venire as a whole. The defendant had waived his right to be present at sidebar during individual voir dire, and this waiver was confirmed by defense counsel at the inception of jury selection. However, as to the exclusion of the defendant's family from the courtroom, nothing was stated on the trial record; there was neither objection nor explicit waiver by the defendant or his attorney.

Of particular relevance are the following findings which we recite verbatim from the judge's decision.

> "It is likely that, although [defense counsel] was acutely aware of the right to a public trial, he did not discuss that right with his client. The defendant did not discuss the fact that his family was asked to leave with his attorney, but claims to have been a little upset because he enjoyed the support that he received when his parents were in the courtroom. Although [defense counsel] does not have a specific recollection of the exclusion of the defendant's family during the course of the jury selection process in this case, he testified that, as a matter of practice, he does not object to family members and supporters being asked to leave the courtroom. He understood that courtroom 12B was crowded and that there was effectively no place for the family to sit other than among the potential jurors and he did not want supporters intermixed with the jurors. He did not want the court officers who he perceived engaged in a difficult job, to be interfered with during the selection process, and he did not feel that the removal of a family or supporters was worthy of an objection. Indeed, he preferred the family and supporters not to be in the courtroom during the selection process because, among other reasons, he viewed it to be a distraction when a lot of other things were ongoing. In this particular case, he knew

that [the defendant's mother] was an emotional individual and thought that it would be a distraction for her to be in the courtroom. Moreover, the defendant's mother had been listed as [a] prospective witness and, therefore, would likely have been excluded pursuant to a sequestration order in any event. There is nothing in the record to indicate that at any time were any family members disruptive when they were inside the courtroom. Despite the fact that [defense counsel] had no specific recollection of the circumstances surrounding this case and courtroom closure, he had consciously decided prior to this trial not to object to the removal of family members or supporters during the jury selection process in courtroom 12B."

On the basis of the foregoing facts, the judge determined that there had been an impermissible courtroom closure; that, although no contemporaneous objection had been made, there was no waiver, because the defendant, personally, had not knowingly, intelligently, and voluntarily waived his right to a public trial; and that prejudice would be presumed because the error was structural. However, the judge ultimately concluded that the defendant was not entitled to relief for two reasons: first, because the public would have made no meaningful observations of the voir dire process, which was done largely at sidebar, and thus the closure made no material difference to the case; and second, because trial counsel's failure to object was a tactical decision that was not "manifestly unreasonable." As we explain below, these two reasons for denying relief are inconsistent with subsequently decided case law.

*Discussion.* Neither the defendant nor the Commonwealth challenges any of the judge's factual findings. At issue is the application of the law to the facts found. We derive the template for analysis from *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94, 106-119 (2010) (*Cohen*), which held in the context of a direct appeal that a partial closure of the courtroom during jury selection had violated the defendant's Sixth Amendment right to a public trial, that he had not waived that right, and that this structural error mandated reversal and remand for a new trial. *Cohen* followed closely on the heels of the United States Supreme Court decision in *Presley* v. *Georgia*, 130 S. Ct. 721 (2010), a

per curiam opinion holding that, under well-settled law, the Sixth Amendment right to a public trial extends to jury voir dire and that closure during this phase of the trial must meet the standards provided in *Waller* v. *Georgia*, 467 U.S. 39 (1984). *Waller* sets out a four-factor test for determining whether a courtroom closure comports with constitutional requirements: closure must be justified by an overriding interest that is likely to be prejudiced; closure must be no broader than necessary to protect that interest; the trial court must consider reasonable alternatives to closing the proceeding; and it must make findings adequate to support the closure. *Id.* at 48.

As *Cohen* illustrates, the analysis of a claim of violation of the right to public trial may be broken down into five steps. We address them in turn.

1. *Was there a closure?* First, it must be determined whether there was a closure in the constitutional sense. In this regard, it is the defendant who has the burden of demonstrating that members of the public were excluded. *Cohen*, 456 Mass. at 107. Here, it is evident from the judge's findings that the defendant carried his burden by proving that his family were required to leave the courtroom during jury selection. It makes no difference that the judge did not know this occurred; "a courtroom may be closed in the constitutional sense without an express judicial order." *Id.* at 108. See *Commonwealth* v. *Alebord*, *ante* 432, 435 (2011). Nor does it make any difference that a large portion of the jury selection proceedings took place at sidebar where they could not have been heard by spectators; the defendant had the right to have the public present in the courtroom during both general and individual voir dire. *Cohen, supra* at 117. Furthermore, while there may be instances where a closure is "so limited in scope or duration that it must be deemed 'de minimis' or trivial," *id.* at 108, the exclusion in this case, which persisted for the entire process of jury selection over the course of two days, and which was accomplished through the employment of an intentional practice by court personnel, cannot "be characterized as so trivial or de minimis as to fall entirely outside the range of 'closure' in the constitutional sense." *Id.* at 109.

2. *Was the closure full or partial?* Next, it must be determined whether there was a full closure (applying to all members of the

press and public) or a partial one limited to some subset of spectators.[6] The significance of this distinction is two-fold. If a closure is partial, the first factor to be applied in analyzing whether the closure met the *Waller* standards is relaxed. While a full closure "must advance an overriding interest that is likely to be prejudiced," *id.* at 111, quoting from *Waller*, 467 U.S. at 48, a partial closure may be justified by a "substantial reason." *Cohen, supra* at 111 & n.25, and cases cited. In addition, while the fourth *Waller* factor requires that there be contemporaneous findings adequate to support a full closure, in a partial closure case, the reviewing court may examine the record itself, even in the absence of formal or express findings by the judge. *Id.* at 115-116 & n.32.

Here, without having the benefit of *Cohen*, the judge did not explicitly determine whether the closure was full or partial. While it might be inferred from the judge's decision that the size of the jury pool was so great that all spectators must have been required to leave the courtroom, we need not confront the issue because, even if the closure was partial, it did not pass muster at the next stage of analysis.

3. *Did the closure satisfy the* Waller *factors?* In this case, even if the closure was a partial one, it did not comport with the standards set out in *Waller*. *Cohen* suggests that in applying the first *Waller* factor, insufficient space may provide a "substantial reason" for a partial closure during jury selection, *id.* at 112; *Alebord, supra* at 436; however, *Cohen* also indicates that in order to satisfy the second *Waller* factor — that closure be no broader than necessary to protect the interest likely to be prejudiced — members of the public who wish to observe the proceedings must not be prevented from doing so as space becomes available. *Id.* at 113-114. See *Owens* v. *United States*, 483 F.3d 48, 62 (1st Cir. 2007). That was not the case here.[7]

---

[6]Although a partial closure sometimes refers to the exclusion of the general public while allowing family, friends, and members of the press to remain, a partial closure also may occur when one or more family members or supporters is excluded. See *Cohen*, 456 Mass. at 110-111 & n.23.

[7]The judge recognized this deficiency, explaining in his decision that "even if an initial overcrowdedness compelled closure of the courtroom, once prospective jurors began to leave the courtroom, any legitimate interest this [c]ourt would have had in closing the courtroom dissipated."

Nor does it appear that, in this case, alternatives were considered, as required by the third *Waller* factor. Indeed, because the judge was not made aware of the closure, he was never in a position to consider alternatives[8] or to make the contemporaneous findings required by the fourth *Waller* factor if this was a full closure. The conclusion that the closure was impermissible under *Waller* is unassailable. Indeed, without expressly conceding the point, the Commonwealth does not argue otherwise.

4. *Did the defendant waive his right to a public trial?* As this court recently has stated, it is the Commonwealth's burden to establish waiver. See *Commonwealth* v. *Downey,* 78 Mass. App. Ct. 224, 230 (2010); *Alebord, supra* at 438. Whether waiver was established is at the heart of the controversy here. In the aftermath of *Cohen,* it is clear that the defendant did not waive his right to a public trial by waiving his right to be present at sidebar during voir dire. 456 Mass. at 116-117. However, the absence of any objection at a time when the public trial violation could have been remedied remains to be considered. Compare *id.* at 118 & n.35 (counsel objected during the jury selection process as soon as he became aware of the closure).

Of particular significance in this case, the judge found that defense counsel was "acutely aware" of the right to a public trial but consciously decided, prior to the defendant's trial, that he would not object to the removal of family members or supporters during jury selection, based upon considered strategic reasons that the judge determined were not manifestly unreasonable. Still, as the judge also found, counsel did not discuss the right to a public trial with the defendant, and there was no conversation between them regarding the exclusion of the defendant's family from the courtroom. On this state of affairs, the judge concluded that the defendant did not waive his public trial right at trial, reasoning that, even though defense counsel likely would have urged the defendant to do so, a defendant may validly waive his right to a public trial only if his waiver is

---

[8]*Cohen* states that empaneling in the largest available court room and reserving space for the defendant's family and the press are "meaningful steps in this direction," but that other alternatives also should be examined. 456 Mass. at 115. Here, the judge noted in his decision that courtroom 12B was one of the largest available in the courthouse; but the family nonetheless was excluded, and there was no consideration of other options.

made knowingly, intelligently, and voluntarily. As the judge opined, "defense counsel could not waive his client's rights without ever discussing the issue of his right to a public trial with him."

The judge's analysis in this regard comports with decisions of this court articulating the principle that, although the defendant's assent need not necessarily appear on the trial record, his knowing agreement is required for the valid waiver of the right to a public trial. Two of these cases were decided prior to the judge's decision and were cited by him. See *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 340 n.1 (1994); *Commonwealth* v. *Patry*, 48 Mass. App. Ct. 470, 475 (2000). Later cases contain further explanation of the need for the defendant's personal, knowing assent and the consequences of its absence. See *Commonwealth* v. *Edward*, 75 Mass. App. Ct. 162, 173-174 & n.13 (2009); *Downey*, 78 Mass. App. Ct. at 230; *Commonwealth* v. *Grant*, 78 Mass. App. Ct. 450, 458-459 (2010).[9]

Despite these decisions, the Commonwealth contends that the defendant's right to a public trial should be deemed waived when, as in this case, defense counsel was well aware of the defendant's constitutional rights, but made a deliberate tactical choice not to object. According to the Commonwealth, the only recourse for a defendant in this position is through the rubric of ineffective assistance of counsel, pursuant to which relief must be denied if, as the judge determined here, counsel's tactical choice was not manifestly unreasonable.

We have explained previously that, in contrast to some other courts, including the United States Court of Appeals for the First Circuit, see *Owens*, 483 F.3d at 63, we do not take the approach urged by the Commonwealth. *Edward*, *supra* at 173 n.13. While there may be room to debate this court's extrapola-

---

[9]In *Alebord*, *supra*, we recently considered a case where neither defense counsel nor the judge was aware that the defendant's friend and two family members were excluded from the courtroom during jury empanelment in keeping with a policy similar to that at issue here. Citing *Edward*, we rejected the trial judge's conclusion, on a motion for new trial, that the defendant's failure to object at trial to the closure, without more, constituted waiver. *Id.* at 438-439 ("Silence alone, however, is not sufficient to demonstrate a knowing waiver"). We remanded the case because "the judge's factual findings [were] not sufficient to allow us to make a determination on our own whether there was such a [knowing] waiver." *Id.* at 439. Here, by contrast, the judge's findings are adequate for his decision and our review.

tion of a "knowing assent" requirement from prior case law of the Supreme Judicial Court,[10] and while the position of the Supreme Judicial Court on this requirement may be unsettled,[11] we will not depart from our own firmly stated, recent precedent.[12]

[10]This court's first articulation of the principle that a defendant's waiver of the right to a public trial must be knowing, intelligent, and voluntary appeared in *Commonwealth v. Adamides*, 37 Mass. App. Ct. 339 (1994), in a footnote that was not necessary to the decision because the validity of the defendant's waiver had been conceded at oral argument. *Id.* at 340 n.1. As support, the *Adamides* footnote cited to *Commonwealth v. Williams*, 379 Mass. 874, 876 (1980). In *Williams*, however, the Supreme Judicial Court had ordered a remand to determine, among other things, "whether the defendant properly waived his right to a public trial, through his actions *or* the actions of his counsel" (emphasis supplied). *Williams, supra.* In turn, *Williams* cited to three decisions from other jurisdictions, none of which went so far as to state that an effective waiver of the right of public trial *required* the defendant's personal, knowing assent. Furthermore, *Adamides* apparently overlooked the Supreme Judicial Court's own gloss on *Williams* — a parenthetical in *Commonwealth v. Stetson*, 384 Mass. 545, 549 n.5 (1981), which described *Williams* as holding that "defendant, through counsel, may waive right to public trial."

Regardless of any weakness in its underpinnings, however, the *Adamides* dictum took root. See *Patry*, 48 Mass. App. Ct. at 475 (no valid waiver where counsel, without discussing the right to public trial with the defendant, waived the defendant's right to be present when the judge gave instructions to the jury in the deliberation room). Recent opinions of this court could not be clearer that there can be waiver of the right to a public trial only with the defendant's personal, knowing assent, although that assent need not appear upon the trial record. See *Edward*, 75 Mass. App. Ct. at 173-174 & n.13; *Downey*, 78 Mass. App. Ct. at 230; *Grant*, 78 Mass. App. Ct. at 458-459.

[11]In *Cohen*, 456 Mass. at 98-100, 117-118, contemporaneous objection by counsel made it unnecessary for the court to consider whether waiver by counsel required the defendant's knowing assent. But see *Cohen, supra* at 118 n.35, citing several cases discussing waiver, including *Edward*, but also observing that "[f]ailure of a defendant *or* his counsel to raise an objection when first made aware of an alleged public trial right violation is, at the very least, a strong indication of waiver" (emphasis supplied). See also *Commonwealth v. Rogers*, 459 Mass. 249, 264 (2011) (where counsel said "[t]hank you" when judge responded to public trial objection by ordering back door of cleared courtroom opened so that defendant's mother could observe jury selection, "the defendant may not now be heard to complain of the strategy that was adopted"). Contrast *Commonwealth v. Simon*, 456 Mass. 280, 305 (2010) (Botsford, J., dissenting), citing to *Edward* in another context for the proposition that "waiver of right to public trial must be by defendant, not only defendant's counsel on his behalf."

[12]We do not agree with the dissent that *Cohen* has weakened the principles articulated in *Edward* and that we therefore are free to disregard the explicit rejection by *Edward* of the ineffective assistance analysis utilized in *Owens*, 483 F.3d at 63. See *Edward*, 75 Mass. App. Ct. at 173 n.13. Furthermore, even after *Cohen*, this court has continued to follow *Edward* and to view the

It is for the Supreme Judicial Court to decide whether to proceed in a different direction.

5. *To what relief is the defendant entitled?* When there has been a violation of the defendant's unwaived Sixth Amendment right to a public trial, the error is structural; prejudice need not be shown. *Cohen*, 456 Mass. at 118-119. And when the error has occurred in the course of jury selection, the only adequate remedy is a new trial. *Id.* at 119. Notably, at oral argument, the Commonwealth disavowed any argument that a procedural waiver of the public trial *issue* independently arose from the failure of the defendant to raise it on direct appeal or in his first motion for postconviction relief. The Commonwealth's argument is that defense counsel waived the public trial *right* by deliberately refraining from objection at trial, and that the defendant's participation in the decision to waive the right was not required. In any event, as explained in *Edward*, 75 Mass. App. Ct. at 165-166, 173, the structural character of a violation of the right to a public trial does not lead to analysis under the substantial risk of a miscarriage of justice standard otherwise applicable to procedurally waived claims. Accordingly, because the defendant's right to a public trial was violated, and because he did not validly waive that right, the defendant is entitled to the allowance of his motion for a new trial.

*Conclusion.* For the foregoing reasons, the order denying the defendant's motion for a new trial is reversed. The judgment is reversed, the verdict is set aside, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*

WOLOHOJIAN, J. (concurring). I join the majority in this case because I agree that *Commonwealth* v. *Edward*, 75 Mass. App. Ct. 162 (2009), compels the result reached. I write separately, however, because I have come to believe (contrary to the view I joined in *Edward*) that when a defendant claims that counsel

---

right of public trial as one that can be waived only with the defendant's personal, knowing assent. See *Downey*, 78 Mass. App. Ct. at 230; *Grant*, 78 Mass. App. Ct. at 458-459.

was ineffective for failing to object to the closure of the court-room, such a claim should not be analyzed as though it were being raised on direct appeal. Instead, such a claim should be analyzed under our traditional framework for evaluating claims of ineffective assistance of counsel. See *Owens* v. *United States,* 483 F.3d 48, 63 (1st Cir. 2007). In other words, we should first evaluate "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

Here, defense counsel made an informed, intelligent, deliberate, and strategic decision not to object to the exclusion of members of the defendant's family during juror voir dire. He did so for several reasons: he did not wish to have the defendant's family intermixed with prospective jurors, and he believed that the family members' presence during jury selection could become an unwanted distraction. The defendant's mother — who posed the additional problem of being emotionally volatile in the courtroom — was likely to be sequestered as a witness in any event. Whether defense counsel's calculus was correct is beside the point; it was a conscious and reasonable tactical decision under the circumstances.

Counsel's performance did not fall below what could be reasonably expected of a competent lawyer standing in his shoes and, as a result, I would conclude — were we not bound by *Edward* — that his decision not to object to the exclusion of the defendant's family from the courtroom waived the defendant's public trial right under the Sixth Amendment to the United States Constitution. See *Levine* v. *United States,* 362 U.S. 610, 619 (1960) (failure to object to courtroom closure constituted waiver of right to public trial). See also, e.g., *United States* v. *Hitt,* 473 F.3d 146, 155 (5th Cir. 2006), cert. denied, 549 U.S. 1360 (2007).

GRAHAM, J. (dissenting). I respectfully dissent. Recognizing that a trial is far more likely to be fair when the watchful eye of the public is present, the First and the Sixth Amendments to the United States Constitution implicitly and expressly, respectively,

grant the public and criminal defendants the right to a public trial. See *Waller* v. *Georgia*, 467 U.S. 39, 44-46 (1984); *Commonwealth* v. *Martin*, 417 Mass. 187, 192 (1994). See also *In re Oliver*, 333 U.S. 257, 270 (1948) ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power"). Moreover, it is clear that the right to a public trial applies to jury selection proceedings, *Presley* v. *Georgia*, 130 S. Ct. 721, 723-724 (2010), which are "a crucial part of any criminal case," *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94, 106 (2010), quoting from *Owens* v. *United States*, 483 F.3d 48, 63 (1st Cir. 2007). The closing of a criminal proceeding to the public may infringe the defendant's rights guaranteed by the Sixth Amendment.

However, the public trial right is not absolute, and in limited circumstances a court may bar spectators from certain portions of a criminal trial. *Martin*, 417 Mass. at 193. Moreover, like other fundamental rights, a defendant's right to a public trial may be relinquished. The requirement articulated in *Commonwealth* v. *Edward*, 75 Mass. App. Ct. 162, 173 (2009), that waiver must be the product of "the defendant's knowing agreement," is not, as the majority acknowledges, the inevitable result of prior case law. See *ante* at 555 n.10. Indeed, the Supreme Judicial Court's subsequent consideration of the issue, arising in a case where the defendant's objection was clearly preserved and raised on direct appeal, adds a layer of complexity to the analysis and provides, at best, an inexact model for our consideration of the facts of this case. See *Cohen (No. 1)*, 456 Mass. at 118 n.35 ("Failure of a defendant or his counsel to raise an objection when first made aware of an alleged public trial right violation is, at the very least, a strong indication of waiver").

For these reasons, on the facts of this case, I disagree with my colleagues' conclusion that we are bound by *Edward* to come to their stated result. Rather, I believe that the approach of the United States Court of Appeals for the First Circuit, see *Owens*, 483 F.3d at 63, supplies a more appropriate test. Where, as here, trial counsel demonstrated a sound tactical reason to waive objection to the closure of the courtroom to the public during empanelment, such assent by counsel should be suf-

ficient to constitute waiver for the purposes of a collateral attack on the defendant's conviction. Accordingly, I conclude that the defendant's motion for a new trial was properly denied.